## PROSECUTIONS UNDER THE JONES LAW.

[Circuit Court of Lucas County.]

LEO C. OTTE v. THE STATE OF OHIO; GEORGE KRUPP v. THE STATE
OF OHIO; AND GOTLEIB J. NOLLER v. THE
STATE OF OHIO.*

Decided, February 2, 1907.

*Constitutional Law—Legislation Restricting the Liquor Traffic—Power
of the General Assembly in that Behalf—Provisions of the Jones
Law—Making the Law Operative—Findings of the Court—Min-
isterial Omissions—Vagueness in the Affidavits—Proof as to Sales
of Beer and Wine—Meaning of the Words "Then and There"—
Proof as to Negative Averments—Criminal Law.*

1. Inasmuch as the power is broadly given to the Legislature of the
   state by the Constitution to provide against the evils resulting
   from the liquor traffic, and no qualification is placed upon that
   power except that no license shall be granted for such traffic, the
   provisions of the Jones law (98 O. L., 68), making a petition
   signed by less than an existing majority of voters sufficient to
   impose prohibition upon a residence district against the will of a
   majority of the voters, does not render the act unconstitutional.
2. It is the manifest intention of the Legislature that the signers of
   a petition for the suppression of the sale of intoxicating liquors
   in a residence district under the Jones law shall be qualified
   electors of the district at the time of the signing, and that their
   number shall be equal to a majority of the votes cast at the last
   preceding municipal election, and that the petition must be filed
   within three months of the placing of the first signature thereon.
3. After the law has been made operative by the judicial findings
   therein provided for, its operation can not be defeated by the
   mere neglect of some ministerial act, such as the failure of the
   judge to cause a certified copy of his findings, together with the
   original petition, to be filed with the clerk of the municipal cor-
   poration within the prescribed time.
4. Although there may have been some vagueness as to the "when"
   and "where" of the commission of the offense as charged in the
   affidavits upon which the prosecutions were based, the charge
   being that the defendants kept certain places from a certain date

---

* Motions for leave to file petitions in error to the Circuit Court of
Lucas County overruled by the Supreme Court, March 12, 1907.

and at various times until a certain other date, the period being one week, yet the affidavits were good in that they at least charged one offense, and the defendants were not prejudiced by them.

5. A finding by a jury that intoxicating liquors were sold at retail by a defendant will not be disturbed by a reviewing court, where based on testimony as to the sale of beer and port wine in a place known as a saloon.

6. In a prosecution under the Jones law, it is not required that the state make proof in the first instance of negative averments in the affidavit.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

These three cases against the state of Ohio arise from the prosecution of claimed offenses against the "Jones law," so-called; the statute, recently enacted by the Legislature providing for the definition of what are known as "residence districts" in municipalities, and for the prohibiting or permitting the sales of liquors therein after obtaining an expression of the wishes of a proportion of the voters in such district. It has been deemed a form of local option, and was enacted by the Legislature to to take the place of a certain previous existing legislation which provided for the obtaining of the expression of the voters by vote, instead of by petition.

A number of important questions are raised by the defendants, who are here the plaintiffs in error. They were convicted in the Police Court of the City of Toledo, of the violation of the said Jones law. The questions are of sufficient general interest to warrant careful consideration and a somewhat extended treatment of some of the points involved.

At a former term of this court, the action of one of the judges of the court of common pleas in passing upon the sufficiency of a petition for the definition of the alleged residence district No. 3—the one involved in the present cases—was before this court for review upon an application for leave to file a petition in error. In our decision of the matter then presented, we were called upon to pass upon some of the questions now re-presented. With the opinion there expressed, as to the constitutionality of the act and its construction in some of the salient features discussed, we are still content. The case has not, as yet, however,

been reported, and in as brief a statement as possible, I will express our views as to the constitutionality of the act and its construction, in view of certain claimed inconsistencies urged by counsel for plaintiffs in error.

It was earnestly urged upon us that the act is, for some reasons, in violation of the Constitution of our state. No special article or section of the Constitution was emphasized in argument, if pointed out, but it is said that the statute, in terms, may impose a prohibition of the liquor traffic upon a prescribed territory against the will of a majority of its electors. It is said that those who do not sign the petition have no opportunity to vote; and also that if it be true that a petition under the act is sufficient when signed by less than an existing majority of the electors at the time of such signing, then it permits a minority of the voters to determine whether the district shall be one in which liquor is or is not legally sold. We are cited in the course of the argument to the case of *The State, ex rel,* v. *Constantine,* 42 O. S., 437, in which it is held:

"Where an office is filled by an election, the election must conform to the requirements of the Constitution, and each elector of the district is entitled to vote for a candidate for each office to be filled at the election.

"A statute authorizing the election of four members of the police board at the same election, but which denies to an elector the right to vote for more than two members is in conflict with Article V of the Constitution."

There is nothing that we discover in this case touching the right of the Legislature to make such enactments as the one before us. The right to provide against the supposed evils of the liquor traffic is a right expressed by the Constitution of the state itself; the power is broadly given to the Legislature to provide by law against the evils resulting from the traffic, and no qualification is placed upon that power, except that no license for such traffic shall be granted. It has been a very common matter of legislation to enact that certain kinds of business deemed inimical to the interests of certain localities, shall not be carried on therein; and in regard to liquor selling we have had

numerous enactments prohibiting the sale of liquors within prescribed distances of certain places; as, for instance, for a long time, within two miles of where a fair was being conducted by an agricultural society, or within a certain distance of public institutions of various kinds.   These acts have not been held invalid; they have been sustained and enforced, and their constitutionality upheld.

By analogy to the principle upon which such enactments are sustained, there would seem to be no restriction upon the powers of the Legislature directly to define districts and call them "residence districts" in a statute prohibiting therein the sale of liquor.   As the Legislature may say that it shall be unlawful to sell liquor within such a distance of a school-house, or a college, or a soldiers' home, or an agricultural fair, just so the Legislature may enact that it shall be unlawful to sell liquor within a defined territory of a municipality in which a certain proportion of blocks or structures are occupied not for business but for residence purposes.   The point at which I am arriving is, that it was not essential that the Legislature should require any expression of the voters at all; the Legislature might or might not place a qualification upon the operation of its enactment, and in this instance it has so done.   It has sought to obtain some expression from the voters of a district in which there was a desire on the part of some to exclude the liquor traffic.   The Legislature, we think, might have said that this shall only be done upon an expression of the will of two-thirds, or three-fourths of the voters.   We think that it might just as constitutionally have said that it may be done upon an expression of one-fourth, or of ten per cent., or of any other per cent. of the voters; it need not have qualified it by giving any more force to the expression of the will of the voters than of other adult members of the population.   It might have permitted the women as well as the men to have expressed their will in the matter.   In other words, there is no limit in the Constitution to the power of the Legislature to make its own qualifications to the operation of such an enactment as this, or to make the enactment unqualified, as it sees fit.

The difficulty which seems to have been encountered by some lawyers, and the obscurity which the judge of the court of common pleas passing upon the sufficiency of the petition relating to residence district No. 3, thought that he found in the statute as to its construction, is not apparent to us. The statute seems to us, so far as regards the requirement concerning the number of petitioners to make the law operative and enforcible, altogether clear—that is to say, as clear as most of the enactments of the Legislature. We have at no time found any difficulty in determining what seems to us the manifest intent of the Legislature in this respect. The claimed inconsistency arises out of the phraseology in certain parts of the statute which seems to make the prohibition or non-prohibition of the liquor traffic in a district depend upon the voice of a majority of the qualified electors, and in other sections of the statute the language that the petition shall be signed by as many qualified electors as equal a majority of the votes cast at the last preceding election—that is, the last regular municipal election in the district. The whole act is to be read together and we can not, in endeavoring to ascertain the true intent of the Legislature, reject any of its parts. Counsel for plaintiffs in error have utterly failed to find any explanation of the use of the clauses of sections three and four, to which I will make reference, unless they are to be used in precisely the manner claimed by counsel for the state. Let us compare these various clauses for a moment—not entirely in detail, but in a general way, in order that we may make clear our understanding of the intention of the Legislature.

Section 1 provides (see 98 O. L., 68):

"Whenever a majority of the qualified electors of any residence district of any municipal corporation sign a petition in favor of prohibiting the sale of intoxicating liquors as a beverage in such residence district," and then take certain other action, certain results shall follow.

Section 2 begins:

"Whenever a majority of the qualified electors of any residence district of any municipal corporation in which the sale of intoxicating liquors as a beverage has been prohibited under

the provisions of section one of this act, shall sign a petition against prohibiting the sale of intoxicating liquors as a beverage in the same residence district and file the petition with the mayor,'' etc., certain results shall follow.

Section 3 provides:

''The petition provided for in this act shall be deemed sufficient when it is signed by as many qualified electors as equal a majority in number of the votes cast at the last regular municipal election in such residence district, but must, in order to be valid, be filed not later than three months after the signing thereto of the signature first in order of time.''

I will not tarry to discuss the effect of this last clause of the sentence, but that it is not to be forgotten in the construction of the entire sentence is, I think, clear. It was not intended that the preparation of a petition, or the obtaining of signatures thereto, should be continued for so long a period as to make it absolutely ineffectual to the obtaining of an approximate measure of the voters. The time is limited to three months in order that it may not reach back to some remote period, because if there were not some such qualification it might be so greatly prolonged in the obtaining of the signatures that there might be a vast change in the population of the district between the taking of the first signature and the last.

Section 4 provides that after the petition has been submitted to the mayor or judge, such official shall decide certain things, and among others, this:

''The mayor or judge shall decide whether the petitioners are qualified electors in the residence district and equal in number a majority of the votes cast in the residence district at the last regular municipal election.''

Now, is it possible that, taking these sections together, any other intent can have been had by the Legislature than that the petition should be signed by persons who were qualified electors at the time of signing, and that in number they should be equal to a majority of the votes cast at the last preceding regular municipal election? The Legislature desired to avoid the difficulty which might arise in the enforcement of a require-

ment that a petition should be insufficient until signed by a majority of the existing electors at the time of the signing, by providing this way of ascertaining approximately the number of voters in the district. We think that this is a plain construction of this act; that no special difficulty attends it, and we think that the finding of the common pleas judge as recited in the affidavit and as appears in the record before us, does show, although it does not state in words, the signing of the petition by a sufficient number of qualified electors. The judge has made findings as to the number of electors still residing in the district at the time of the signing and as to the number of votes cast at the last preceding regular municipal election; he has stated the number of signatures by qualified electors upon the petition, and rejecting such matters as are clearly surplusage in the certificate made by him, the certificate still contains all that the statute requires it to show in the determination of the question whether the petition was a sufficient one under the statute.

Another question, and one not altogether free from difficulty, is raised by the claim that there was a neglect to comply with the statute requiring the judge to cause a certified copy or certificate of his findings, together with the original petition, to be filed with the clerk of the municipal corporation or council, not less than five days after the finding and not more than forty days from the filing of the petition with him, and that, without a record by the clerk, there is no sufficient showing that the so-called residence district became one in which it was unlawful to vend intoxicating liquors and keep a place for such purposes. The language of the statute does not require the judge to cause a certificate to be recorded in the records of his court. It requires him to make a record of his findings on his docket and also to cause this certified copy or certificate of his findings, together with the original petition, to be filed with the clerk, as I have stated. There are two provisions of the act which bear upon the question as to what is the effect of the record or the use to be made of it in the subsequent proceedings to enforce the act. Section 1 provides that the decision of the judge as certified to the clerk of the municipal corporation or

council and recorded by him in the records of the council or corporation, or a certified copy thereof, provided it shows that a majority of the voters of such residence district were in favor of prohibiting the sale of intoxicating liquors as a beverage, shall be *prima facie* evidence that the selling, furnishing or giving away, etc., was prohibited and unlawful.

Section 5 provides:

"If the findings of the mayor or judge or a copy as recorded by the clerk of the municipal corporation or council on the records of the council shows that a majority of the qualified electors in the residence district named are in favor of prohibiting the sale of intoxicating liquors as a beverage, then, from and after thirty days from the date of such finding by the mayor or judge it shall be unlawful for any person," etc., to do the acts prescribed in what we know as a prohibited district under the law. This last section—five—seems to be somewhat more sweeping than the other, and to make it not simply presumptively unlawful but absolutely so to sell in the district after the finding of the mayor or judge or the recording of the copy. Note that the requirement here is in the alternative. It does not say "the findings and the record," or "the findings as recorded," but if the findings show, or if the copy of the findings as recorded shows, then it shall be not simply *prima facie* unlawful, but it shall be absolutely so, to sell.

There is more difficulty in the construction of this passage, to my mind, than there is in the one upon which counsel have placed the principal emphasis in their argument, but after a consideration of the entire statute and the object sought to be subserved by it, its general spirit and purpose as well as its letter, we are of the view that it is not in the power of the municipal clerk, nor even of the common pleas judge, to defeat the operation of the law by the mere neglect of a ministerial act. If the law has been made operative by the judicial findings provided for in it, if the substance of the act so far as regards the obtaining of the petition and its submission to the proper judicial officer, and his passing upon it and finding its sufficiency, have all been followed, and the record made upon the docket as provided by

law, and if those proceedings show that a sufficient petition has been filed, then we think that within the spirit of this enactment it is unlawful in such district to sell, and that it is not essential that the record should be made by the clerk to make the statute enforcible within the prescribed district.

The affidavit upon which the prosecutions in these cases were based is not quite so artistically drawn in some respects as might be desired—especially as regards the allegation of the place *where* and the time *when* the alleged offenses were committed, and it is urged upon us that there is no sufficient averment of venue—not exactly perhaps, as to the county, but more especially as to the commission of the offense within the boundaries of the prescribed district. This affidavit is so long and so complicated that I will not tarry now to re-read it: I have read it several times, as have the other judges of this court, and, of course, counsel; but we think that the frequent use of the phrase "then and there" in various parts of the affidavit, after mentioning certain dates and describing in detail this District No. 3, and mentioning the county and municipality in which the district is to be found, sufficiently apprises the defendants of the time and place in which it is sought to charge that they had violated the law. In this very useful work, in several volumes, Words and Phrases Judicially Defined, found in our law library, in Vol. 8, at pages 6947 and 6948, I find reference to certain decisions which I will cite as bearing upon the use which may be made of this phrase "then and there" in the construction of an indictment, information or complaint:

"Where an indictment specifies a certain date in the caption and another date in the body thereof, and the phrase 'then and there' is afterwards used in the indictment, it will be construed as referring to the date last mentioned. *Commonwealth* v. *McKenney*, 80 Mass. (14 Gray), 1, 2."

" 'Then and there,' as used in an indictment, means the time and place last previously mentioned therein. *State* v. *Hurley*, 71 Me., 354, 355."

"The words 'then and there' as used in an indictment, are words of reference, and when time and place have once been

named with certainty, it is sufficient to refer to them afterwards by these words, and they will have the same effect as if the time and place were actually repeated. These words also refer to the time and place last specified, unless there be some phrase connected therewith which shows that a different reference is intended. *State* v. *Cotton,* 24 N. H., 143, 146.''

''The words 'then and there' in an allegation in an indictment for arson that defendant burned a certain house then and there occupied, controlled and owned by him, refers to the time and county previously stated, and is a sufficient statement of the *locus in quo* of the house burned. *Baker* v. *State,* 8 S. W., 23, 24; 25 Tex. App., 1.''

There are numerous other cases along the same line, but I have selected these as having special pertinency to the language found in these pleadings.

It is also objected that the affidavit charges several offenses; that they are objectionable for duplicity or vagueness. They are like in the three cases, in substance, and almost exactly so in phraseology. They charge that the defendants kept the places from a certain date and at various times until a certain other date, the intervening period being only one week. Now, this may not be a technically correct form of averment, and yet, under all the circumstances, and just as it is alleged here, we think that it at least charges one offense and we do not think that the defendants were in any way prejudiced, so far as appears by the whole record, by any lack of clearness in the affidavit in this respect. Reference may be made to the familiar section of the Revised Statutes, in the Criminal Code, Section 7215, often referred to for its bearing upon these and like questions:

''No indictment shall be deemed invalid, nor shall the trial, judgment or other proceeding be stayed, arrested, or in any manner affected, * * * for omitting to state the time at which the offense was committed, in any case in which time is not of the essence of the offense; nor for stating the time imperfectly; * * * nor for the want of an allegation of the time or place of any material fact, when the time and place have once been stated in the indictment * * * nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.''

Without dwelling longer upon this matter, we think that there was no prejudice to any substantial rights of the defendants upon the merits—in the rulings of the court below upon this affidavit.

Several contentions were made by counsel for plaintiffs in error which we think must have arisen from forgetfulness of what is contained in the record itself—for instance, it is said that the court erred in the admission of the evidence of one Biddle. But no objection was taken upon the trial and no ruling of the court was excepted to in this instance. It is said that there was no evidence that intoxicating liquors were sold or given away. One witness, Wagers, testified positively that he bought beer in one place, and he tells about beer being sold to numerous other people. He says that the place was a saloon; that it was kept for the sale of intoxicating liquors at retail. Now it may be said that to speak of the sale of wine or beer is not the same as to charge the sale of intoxicating liquors. This may sometimes be true, but it is not always true; it depends upon the sense in which the words are manifestly used by the one speaking. If a witness has reference to a kind of beer which is intoxicating—and no one disputes that some beer is intoxicating—or if the witness speaks of a kind of wine that he deems intoxicating, then his statements are to be taken as his testimony that the liquor sold and drank was such. In one of the instances he speaks of lager beer as bought by himself. I will read from Vol. 1 of this same work, Words and Phrases Judicially Defined, at page 733:

"When beer is called for at a bar in a saloon or hotel the bartender would know at once from the common use of the word that strong beer was wanted. When the word 'beer' is used in court by a witness, the court will take judicial notice that it means a malt and an intoxicating liquor. In the meaning of the word itself, there is a *prima facie* proof that it is malt or intoxicating liquor that is meant. *Briffitt* v. *State*, 16 N. W., 39, 41; 58 Wis., 39; 46 Am. Rep., 621."

In the Indiana case, immediately following, to which reference will be made, definitions of Webster as to various kinds of beer and as to the general use of the word are given and then this statement is made:

"As a consequence, when beer is called for at a place at which intoxicating drinks are sold, the bartender, having in view the primary meaning, as well as the common use of the word, is justified in inferring, and must reasonably infer, that malted and fermented beer is wanted. When, therefore, a witness testifies to the sale or giving away of beer under circumstances which make the sale or giving away of any intoxicating liquor unlawful, the *prima facie* inference is that the beer was of that malted and fermented quality declared by the statute to be an intoxicating liquor, and the court trying the cause ought to take judicial notice of the inference which thus arises from the use of the word 'beer' in its primary and general sense. *Myers* v. *State*, 93 Ind., 251, 252; *State* v. *Jenkins*, 4 Pac., 809, 811; 32 Kan., 477; *Dant* v. *State*, 5 N. E., 870, 871; 106 Ind., 79; *State* v. *Tisdale*, 55 N. W., 903, 904; 54 Minn., 105."

"Testimony that beer was sold in a drinking saloon by one who manufactured it will be taken to mean a sale of the fermented malt liquor commonly sold in such saloons, and not ginger beer, root beer, or the like. *State* v. *Dick*, 50 N. W., 362, 363; 47 Minn., 375."

"In its ordinary sense, 'beer' denotes a beverage which is intoxicating, and is within the fair meaning of the words 'strong or spirituous liquors,' as used in statutes regulating the sale of such liquors. 'Its primary signification is that of a malt liquor; and if it is to be understood in a restricted or qualified sense, such as to denote root beer, molasses beer, or persimmon beer, etc., it would be incumbent on the defendant to show that such is the case.' There have been a great many decisions on the subject, but the most of them sustained the view that the court will take judicial notice that the word 'beer' when used in a court by a witness, means a malt and an intoxicating liquor. *Maier* v. *State*, 21 S. W., 974, 976; 2 Tex. Civ. App., 296; *United States* v. *Ducournau* (U. S.), 54 Fed., 138, 139 (citing *Tinker* v. *State*, 90 Ala., 647; 8 South., 855; *Watson* v. *State*, 55 Ala., 158; *Allred* v. *State*, 89 Ala., 112; 8 South., 56); *State* v. *Effinger*, 44 Mo. App., 81, 83; *State* v. *Teissedre*, 2 Pac., 650, 653; 30 Kan., 476."

As to one of these cases before us, it was mentioned by a witness that "port wine" was sold. On page 3745 of Vol. IV of Words and Phrases Judicially Defined, is this citation:

" 'Intoxicating liquors,' as used in Acts 1876-77, c. 38, prohibiting the sale of intoxicating liquors, etc., include port wine. *State* v. *Packer*, 80 N. C., 439, 440."

And, on the same page:

"In a prosecution for selling intoxicating liquor on election day, and instruction that 'wine is an intoxicating liquor within the meaning of the statute, and its sale or gift on election day is prohibited,' was approved, the court saying: 'The court takes judicial knowledge of the fact that wine is an intoxicating liquor, which is a matter of common knowledge.' *Wolf* v. *State*, 27 S. W., 77, 78; 59 Ark., 297; 43 Am. St. Rep., 34."

I also wish to refer, upon the question as to the intoxicating character of beer, to the case of *Markle* v. *Town Council of Akron*, 14 Ohio Rep., 586, 587, 591. I read from the latter page:

"It was said on the trial below, that beer was not intoxicating liquor, and therefore not within the terms of the ordinance. The evidence spread upon the record shows that it had decidedly an intoxicating effect upon the vendee; and after drinking it he immediately became boisterous, and the plaintiff in error was compelled to force him from his premises. But, aside from this, beer may be denominated the 'raw material' from which alcohol is made, and science proved on the trial the parts of which it was composed, by actual analysis, and we can not differ with the court of common pleas in the opinion that it is in its very nature inebriating in its consequences, when drank to excess."

Now in Section 7 of the Jones act, on page 72, Vol. 98 Ohio Laws, we have this definition of "intoxicating liquor":

"The phrase 'intoxicating liquor' as used in this act shall be construed to mean any distilled, malt, vinous or any intoxicating liquor, by whatever name the same may be known."

And in that connection I will cite the case of *Weisbrodt* v. *State*, 50 O. S., 192, in which it is stated, *per curiam:*

"The record presents the question whether or not in an information under Section 6948 of the Revised Statutes, which makes it an offense to keep open on election day any place where on other days spiritous, vinous or malt liquors are habitually sold and drank, it is sufficient to describe the place as one 'where intoxicating liquors were on other days habitually sold and drank.' We answer the question in the negative. All spiritous, vinous or malt liquors are intoxicating, but all intoxicating liquors are not necessarily either spiritous, vinous or malt liquor."

Now, as already indicated, the witness testifying in these three cases which we are considering, associated in his mind with his remembrance of what he and others bought at the bar where persons congregated, the idea that it was in what he called a saloon; that they called for beer, or that they called for wine— one on one occasion "port wine"—with other qualifications or explanations of what they wanted, and surely it was proper for the jury in the court below to take into consideration all the attending circumstances in determining the character of the transaction. We think that the jury were entirely justified, in view of all the testimony and in default of evidence of any kind adduced by the defense, in concluding that this was a selling of intoxicating liquors.

It is said by counsel in argument that none of the negative propositions in the affidavit were proven. There was proof as to at least some of the negative averments of the affidavit; but, in our judgment, no proof was required, in the first instance, from the state. The statute does make the exclusion of these matters a part of the definition of the offense, and it has been repeatedly held that unless it be a part of the definition of the offense, then it is not incumbent upon the state to make proof of the fact. To illustrate: if the statute had provided that it should be unlawful to sell without a written permit from some person, or without a prescription, it might be necessary to show that there was no permit or no prescription; but as to the matter which it is claimed should have been shown by the state here, it is in a separate section, no part of the definition of the offense, and it is rather a matter of defense, an exception to the operation of the general prohibition. The statute is not meant to operate upon certain classes of persons, but it is intended to operate upon people generally. Now, to bring the defendants within the class excepted from the general enactment, the decisions are all in harmony, that it is incumbent upon the defendant to make such showing and not upon the state to show that defendant does not belong to such class.

.. Our consideration of the whole matter is that the several contentions of counsel for plaintiffs should not be sustained. We find no errors in the record that by any possibility can have prej-

udiced the rights of the defendants below. Probably the purpose of the defendants is to test the validity of the act and to obtain a proper construction of it—at least we judge that such is the case from the fact that no defense was offered on the trial in the police court in the way of introduction of evidence of any kind.

The judgment of the court of common pleas, sustaining the judgment of the police court, should be and is affirmed.

*F. M. Salz, Frederick C. Schall* and *Ullery, Martin & Webster*, for plaintiffs in error.

*E. L. Twing* and *W. B. Wheeler*, for the state.