No. 19,301.

THE STATE OF KANSAS, *Appellee,* v. ALBERT N. MILLER and J. J. PENNELL, *Appellants.*

No. 19,302.

THE STATE OF KANSAS, *Appellee,* v. FRANK P. KIBBEY and LISLE STEADMAN, *Appellants.*

No. 19,303.

THE STATE OF KANSAS, *Appellee,* v. CHARLES H. BASKIN, *Appellant.*

SYLLABUS BY THE COURT.

1. LIQUOR LAWS—*What Liquors are Intoxicating under the Statute.* Under sections 1 and 4 of chapter 164 of the Laws of 1909, relating to intoxicating liquors, any spirituous, malt, vinous or fermented liquors shall be construed and held to be intoxicating liquor, and any other liquor which is intoxicating in fact shall be construed and held to be intoxicating liquor.

2. SAME—*Test to Determine Whether Liquor is Intoxicating Within the Statute.* The test to be applied in determining whether or not the sale and keeping for sale of liquors other than those specifically mentioned in the statute is prohibited is this: If the liquor in question be of such a kind that the distinctive character and effect of intoxicating liquor be absent, it is outside the statute; if the distinctive character and effect of intoxicating liquor be present, it is within the statute. The fact is to be determined by the jury, or by the court sitting as a trier of the facts.

The State v. Miller.

3. SAME—*Earlier Interpretations of Liquor Laws Abrogated by Subsequent Statutes.* The classification of liquors made in the decision in the *Intoxicating-Liquor Cases,* 25 Kan. 751, interpreting the intoxicating-liquor law of 1881, and the definition of intoxicating liquor which that law contained, was abrogated by the statute of 1909.

4. SAME — *"Intoxicating Liquors" — Statutory Construction.* When the statute of 1909 became effective the words "intoxicating liquors," wherever used in the intoxicating-liquor laws, became impressed with the signification given them by that statute.

5. SAME—*"Jamaica Ginger" an Intoxicating Liquor.* The evidence examined, and held to be sufficient to sustain a finding that Jamaica ginger is an intoxicating liquor, notwithstanding it has a medicinal use, the formula for its preparation is given in the United States dispensatory, and it is there classified with lemon, vanilla, cinnamon, cloves, camphor, cologne, paregoric, wintergreen, and like tinctures, extracts and essences.

Appeals from Geary district court; ROSWELL L. KING, judge. Opinion filed July 7, 1914. Affirmed.

*Thomas Dever, W. S. Roark,* and *James V. Humphrey,* all of Junction City, for the appellants.

*John S. Dawson,* attorney-general, and *William W. Pease,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The actions were instituted to enjoin the defendants from maintaining common nuisances contrary to the provisions of the intoxicating-liquor law. The cases were tried together and the state prevailed. The defendants took separate appeals which may be considered together.

The defendants are druggists owning and conducting retail drug stores in the city of Junction City. The judgments rest on proof that the defendants kept for sale and sold the article known as Jamaica ginger. On occasions they manufactured the article according to

the formula found in the United States Pharmacopœia. The following stipulation was made:

"It is herewith agreed that the testimony as to sales that will be introduced in these cases will relate to the following articles or compound, to-wit: That tincture, extract or essence that is designated in the United States Dispensatory as 'Tincture of Ginger,' and is commonly called and known as 'Jamaica Ginger.' Is in the United States Dispensatory classed with those of lemon, vanilla, cinnamon, cloves, camphor, cologne, paregoric, peppermint, wintergreen, and many others of like character; and also that said tincture of ginger is composed of ingredients, as shown by the formulæ in the United States Dispensatory, as follows: 93 to 94 per cent alcohol, the balance being a fluid extract of ginger."

The evidence was that the use of Jamaica ginger as a substitute for whisky has become quite extensive in Junction City. The preparation is intoxicating, the ginger—itself a stimulant—working no change in the intoxicating character of the alcohol, and the effect produced is about the same as that of whisky. It is capable of being used as an intoxicating liquor, the method being to dilute it with water, and it was so used to such an extent that blacklists were kept of persons who were known to be using it too freely. The city marshal furnished the druggists of the city with a list of the names of eleven of such persons. Some of the defendants had other persons in mind also. Persons on the blacklist would send unsuspected persons to the drug stores to buy for them. The preparation seems to have been sold in two-, three-, and four-ounce bottles. One witness paid twenty-five cents per bottle (size not stated) for what he drank. The defendants were quite indefinite as to the matter of total daily sales. One of them who was pressed for an esti-mate said he did not think his sales were as much as three or four dollars per day. One habitué said there was a difference in the color and strength of the liquid procured from different drug stores. Sometimes bot-

The State v. Miller.

tles were sold without a label. Sometimes bottles were refilled. In one instance two young men, referred to in the course of the trial as boys, drank a bottle together. When giving judgment in the case the court said:

"It is true, these druggists took precautions, and I don't think they intended, really, to sell to any one that they found out was really using it as a beverage, but yet they must have known that it was being used in that way."

Two of the defendants possessed internal revenue stamps. The other did not. Possession of such a stamp was explained in this way:

"Ques. Mr. Miller, you may state whether or not you have any drugs, medicines or compounds in your establishment that require a Government stamp for intoxicating liquors. Ans. Yes, sir, we have a good many of them.

"Ques. About how many of them? Ans. I wouldn't dare to say how many of them. There are 247 patent medicines we are notified by the Government of the United States that we must have a stamp to carry. I could n't say how many of them I have.

"Ques. State whether that is the reason you had a stamp. Ans. Yes, sir, and we were notified by Mr. Jackson at the time."

"Ans. Ever since I have carried a stamp, because none of those 247 patents, we are not furnished with a list of them, and every once in a while there are twenty or thirty added to it, and every once in a while an Internal Revenue man might drop in."

The law of 1881 contains these provisions:

"Any person or persons who shall manufacture, sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors, shall be guilty of a misdemeanor, and punished as hereinafter provided: *Provided, however,* That such liquors may be sold for medical, scientific and mechanical purposes, as provided in this act.

"All liquors mentioned in section one of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within

the meaning of this act." (Laws 1881, ch. 128, §§ 1, 10, Gen. Stat. 1901, §§ 2451, 2460.)

Material portions of the injunction statute under which the present proceedings were commenced are the following:

"All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter or delivery in violation of the law, and all intoxicating liquors, bottles, glasses, kegs, pumps, bars and other property kept in and used in maintaining such a place, are hereby declared to be common nuisances." (Laws 1901, ch. 232, § 1, Gen. Stat. 1909, § 4387.)

"The attorney-general, county attorney, or any citizen of the county where such a nuisance as is defined in section 1, chapter 232, Session Laws of 1901, exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same." (Laws 1903, ch. 338, § 1, Gen. Stat. 1909, § 4388.)

The liquor law of 1881 was interpreted in the *Intoxicating-Liquor Cases*, 25 Kan. 751, decided in 1881. Speaking through Mr. Justice Brewer, the court said:

"This section [10] whose language is unfortunately chosen, is the one which has provoked this litigation, and has tended to create so much prejudice against the statute; for its letter reaches to preparations which no man can believe were within the intent of the legislature, and any interference with whose sale, if within the power of the legislature, would be felt by every one to be unnecessary and unreasonable. Alcohol is the intoxicating principle, the basis of all intoxicating drinks. Whatever contains alcohol, will, if a sufficient quantity be taken, produce intoxication. Hence, whatever liquor contains alcohol is within the statute. So reads its letter. But when we come to inquire as to the liquors which contain alcohol, we find a lengthy list of fluids which are never used as beverages. Cologne, extract of lemon, bay rum, paregoric, tincture of gentian and many other medicinal preparations con-

The State v. Miller.

tain alcohol and all will produce intoxication. They are seldom used as a beverage, and yet they may be. Intoxication produced by drinking bay rum has been known. Yet few will drink it. Its uses are for the toilet. But three of the cases before us are prosecutions for the sale of bay rum, essence of lemon and tincture of gentian, respectively. These preparations contain alcohol, and will each, it is charged, produce intoxication. If the statute includes such articles, many of them are absolutely and wholly shut out from sale. . . . But the legislature never intended such a sweeping prohibition. The use of intoxicating liquors as a beverage was the evil, and the statute must be read in the light thereof. It intended to put a stop to such use, and limit the use to the necessities of medicine. Now the cases before us group themselves into three classes; and the same division is far reaching and of general application. The first embraces what are generally and popularly known as intoxicating liquors, unmixed with any other substances. Thus in one case the sale of brandy is charged. The second includes articles equally well known, standard articles, and which, while containing alcohol, are never classed as intoxicating beverages. Their uses are culinary, medical, or for the toilet. They are named in the United States dispensatory and other similar standard authorities; the *formulæ* for their preparation are there given; their uses and character are as well recognized and known by their names as those of a horse, a spade, or an arithmetic. The possibility of a different and occasional use does not change their recognized and established character. A particular spade may be fixed up for a parlor ornament, but the spade does not belong there. So, essence of lemon may contain enough alcohol to produce intoxication, more alcohol proportionately than many kinds of wine or beer. It is possible that a man may get drunk upon it, but it is no intoxicating liquor. Bay rum, cologne, paregoric, tinctures generally, all contain alcohol, but in no fair or reasonable sense are they intoxicating liquors or mixtures thereof. The third class embraces compounds, preparations, in which the alcoholic stimulant is present, which are not of established name and character, which are not found in the United States dispensatory, or other like standard authorities, and which may be purely medicinal in their purpose and effect, or mere

substitutes for the usual intoxicating beverages. If not intoxicating liquors they may be 'mixtures thereof' within the scope of the statute. Here belong many of the patent medicines, the bitters, cordials, and tonics of the day. Here also are such compounds as that charged in one of the informations before us, a compound of whisky, tolu and wild cherry." (pp. 762, 766.)

The conclusion was that the first class was within the statute, the second class was without the statute, and the courts could so declare as a matter of law. Whether or not articles belonging to the third class were within the statute presented a question of fact for the jury.

The defendants argue that the stipulation entered into places Jamaica ginger in the second class referred to in the *Intoxicating-Liquor Cases* as a medicinal article whose ordinary use is the relief of colic, diarrhœa and similar disorders; the use of culinary toilet and medicinal articles belonging to this class as substitutes for whisky not having been in the legislative mind in 1881, the statute does not embrace them now; and judgment should in strictness have been rendered against the state on the stipulation.

The difficulty with this argument is that the statute of 1881 as interpreted in the *Intoxicating-Liquor Cases* is no longer in force. In 1909 the legislature passed a new act which extended the prohibition of the law to the manufacture and sale of intoxicating liquors for medical, scientific and mechanical purposes, and which superseded the old definition of intoxicating liquors.

Sections 1 and 4 of chapter 164 of the Laws of 1909 read as follows:

"Section 1. That section 2451 of the General Statutes of Kansas, 1901, be amended so as to read as follows: Sec. 2451. Any person or persons who shall manufacure, sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors shall be guilty of a misdemeanor and punished as hereinafter provided.

"Sec. 4. That section 2460 of the General Statutes of Kansas, 1901, be amended so as to read as follows: Sec. 2460. All liquors mentioned in section 1 of this act shall be construed and held to be intoxicating liquors within the meaning of this act." (Gen. Stat. 1909, §§ 4361, 4364.)

The only modification of the act of 1909 is that, under an act passed in 1911, wholesale druggists of a certain class may sell alcohol for medicinal, scientific and mechanical purposes to registered pharmacists engaged in good faith in the retail drug business, in quantities of not less than one gallon and not more than five gallons.

The result is that the court has before it for interpretation a statute substituted for the one on which the defendants rely, for the purpose of meeting conditions which have arisen since 1881, and for the purpose of extending and strengthening the prohibitory law.

In the case of *The State v. Ross*, 86 Kan. 799, 121 Pac. 908, an interpretation given the act of 1881 by a decision rendered in 1887 was pressed upon the court. In response it was said:

"The legislature has traveled very far since that statute was enacted and that case was decided, and a person would make a great mistake to rest conduct upon the liquor law as it then stood. The schemes and shifts and devices to evade the law have been so numerous and cunning, and the social benefits hoped for from regulation of the liquor traffic have been so persistently circumvented, that the legislature has felt it necessary again and again to call upon the people to make personal forbearances in the interest of what has been esteemed the general welfare." (p. 802.)

One of the perfectly natural and inevitable consequences of the strict enforcement of the prohibitory law was that persons with alcoholic addictions and others desiring the stimulating effect of alcohol should turn to the nearest substitutes for the usual intoxicating agents. In 1881 it was known that persons would use bay rum for purposes of intoxication. (*In-*

*toxicating-Liquor Cases,* 25 Kan. 751, 762.) Extract of lemon has been used for the same purpose with success. (*Holcomb v. The People,* 49 Ill. App. 73.) The same is true of essence of cinnamon (*State v. Muncey,* 28 W. Va. 494), and Jamaica ginger cases are common in the books (*Mitchell v. Commonwealth,* 106 Ky. 602, 51 S. W. 17; *Arbuthnot v. State,* 56 Tex. Crim. Rep. 517, 120 S. W. 478; *Bertrand v. State,* 73 Miss. 51, 18 South. 545).

In the case of *Mitchell v. Commonwealth,* the opinion reads:

"Appellant was convicted of the offense of selling intoxicating liquors in violation of a special act applicable to Laurel and four other counties. The sole proof was of a phial of Jamaica ginger, White's brand. It is claimed that this was a variance. It was not a variance, if Jamaica ginger was a spirituous liquor. The jury found that it was. But the objection is urged that there was no evidence to support this finding, as both the vendor and vendee swore it was not intoxicating. Evidence of a druggist was introduced that the regulation requirement of Jamaica ginger was 96 per cent alcohol and 4 per cent ginger. If the jury believed this testimony, and believed that the phial contained Jamaica ginger (and it was bought and sold as such), they were authorized to conclude that it was intoxicating. Moreover, we think that, without the druggist's evidence, it is a matter of common knowledge that Jamaica ginger is an intoxicant and a spirituous liquor, and it is hardly more necessary to introduce testimony of that fact than it would be of whiskey." (p. 603.)

It will not be assumed that the legislature was ignorant of the fact that persons deprived of their usual stimulants would resort to substitutes, or that dealers with an eye to profit would supply customers desiring stimulants with fair substitutes.

In 1909 the small remedial value of alcoholic stimulants as compared with the former popular notion regarding their curative properties had been established. The pathway to inebriety through the use of patent

and other medicines, consisting of intoxicating liquor containing some barks or drugs or roots or seeds having more or less medicinal property, had been unmasked. The United States Pharmacopœia, which lists straight alcohol—the common beverage of a certain class of drinkers—was no longer the touchstone by which to divide medicine from intoxicants. None of the social disasters which had been predicted as results of the law of 1881 had befallen the state. Fear lest the law might be brought into disrepute by encroachment on the right to use preparations containing alcohol was no longer entertained. Nearly thirty years' experience disclosed that restraints, which year by year had been continually imposed and which would have been regarded as unnecessary and unreasonable when the law was new and strange, were fit and wholesome and were approved by public sentiment. The progress of events had been such, when the legislature approached a revision of the law in 1909, that the intellectual, moral, social, and legal atmosphere had become a wholly different medium from that in which the legislature of 1881 labored. If in the act of 1909, which cut off the sale of intoxicating liquors for even medicinal purposes, the legislature had inserted the following definition: All liquors mentioned in section 1 of this act, and all other liquors or mixtures thereof, by whatever name called, which will produce intoxication, shall be considered and held to be intoxicating liquors, no one would have regarded the language as unfortunately chosen, or as tending to produce prejudice against the law, or as unnecessary or unreasonable because reaching culinary, toilet, or medicinal preparations in fact intoxicating and used as substitutes for whisky. The spirit and internal sense of the law would have been regarded as identical with the ordinary and popular signification of the plain words. The suggested definition is precisely the one contained in the law of 1881.

Since the court, acting according to its light in 1881, had interpreted the definition contained in the earlier statute to exclude from the class "intoxicating liquors" a class of liquors which were intoxicating, the legislature repealed the definition and substituted another which, when read, as it must be, with section 1 of the act of 1909, means and says this: Any spirituous, malt, vinous, or fermented liquor shall be construed and held to be intoxicating liquor and any other liquor which is intoxicating in fact shall be deemed and held to be an intoxicating liquor. The legislature was not doing an idle thing by repealing one definition and substituting another. It intended to change the law, and the result is that the classification established by the *Intoxicating-Liquor Cases* is abrogated. Liquors belonging to the first class there described, such as whisky, brandy, gin, wine, beer, and the like, are still to be construed to be intoxicating. All other liquors belong to the third class, and the rule or test is this: If the liquor be such that the distinctive character and effect of intoxicating liquor be absent, it is outside the statute; if the distinctive character and effect of intoxicating liquor be present, it is within the statute. The fact is to be determined by the jury, or by the court when sitting as a trier of the facts.

If in any case the liquor sold or kept for sale be identified by the proof as plain whisky or brandy or gin or wine or beer, or other spirituous, malt, vinous, or fermented liquor of the kind specifically mentioned in the statute, it shall be construed and held to be intoxicating. As to such liquors the statute simply declares what the courts and everybody else know. If the liquor sold or kept for sale be not so identified, but belongs by name or qualification of name to some other class, or be unclassified, its intoxicating character must be submitted to the jury, or to the court when trying the facts, as a question of fact. In such cases the evidence may relate to its nature and constituent elements,

its ordinary use, its susceptibility to use as an intoxicant, the extent of such use, and all other matters which in the particular instance will aid in determining the issue.

The evidence in the cases under consideration was amply sufficient to warrant a finding that Jamaica ginger is an intoxicating liquor within the meaning of the statute.

The court has repeatedly held that the various provisions of the intoxicating-liquor statutes are to be construed as a comprehensve whole directed to a common end. When the act of 1909 became effective the injunction statute was not amended in any sense of the term, but the words "intoxicating liquors" used there, and used elsewhere throughout the body of the prohibitory law, became impressed with the signification given them by the statute of 1909.

The judgment in each of the three cases is affirmed.

PORTER, J. (dissenting) : I can not concur in the majority opinion. All prohibitory legislation since 1881 has proceeded upon the supposition that the words "intoxicating liquors" had been defined by this court in the able opinion rendered by Justice Brewer, which is referred to in the majority opinion in this case. It was there held that it was not the intention of the legislature, by the term "intoxicating liquors" in the act of 1881, to include extract of lemon and dozens of other well-known compounds that are in daily use in the household and sold everywhere by druggists. I have no reason for believing, and the majority opinion suggests no real reason, why the court should say now that the legislature intended by the amendment of 1909 to extend the scope and meaning of the words "intoxicating liquors." To my mind it is clearly manifest that the legislature merely intended to do away with the provision of the former law permitting the sale of intoxicating liquors for certain excepted purposes.

Section 1 of the original prohibitory liquor law reads as follows:

"Any person or persons who shall manufacture, sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors, shall be guilty of a misdemeanor, and punished as hereinafter provided: *Provided, however, That such liquors may be sold for medical, scientific and mechanical purposes, as provided in this act."* (Gen. Stat. 1901, § 2451.)

The only change in this section by the act of 1909 was to omit the proviso that liquors might be sold for the three excepted purposes. The original act (Gen. Stat. 1901, § 2460) defined intoxicating liquors in the following language:

"All liquors mentioned in section one of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this act."

This section was in the law when Judge Brewer wrote the opinion for the court declaring that the legislature never intended such a sweeping prohibition as to include standard articles, which, while containing alcohol, are never classed as containing intoxicating beverages. The legislature of 1909 amended section 2460 and took away even the restricted definition of the act of 1881. Section 4 of the act of 1909, reads:

"That section 2460 of the General Statutes of Kansas, 1901, be amended so as to read as follows: Sec. 2460. All liquors mentioned in section 1 of this act shall be construed and held to be intoxicating liquors within the meaning of this act." (Laws 1909, ch. 164, § 4, Gen. Sat. 1909, § 4364.)

The decision in this case may work substantial justice to the particular druggist who is the defendant, but it renders any druggist in the state liable to prosecution if he has in best of faith sold bay rum, extract of lemon, Jamaica ginger, or numerous other tinctures which contain a large percentage of alcohol. My ob-

jection to the decision is that it legislates. A condition may have arisen which calls for the enactment of a law making it a misdemeanor to sell any tinctures and compounds that contain a certain percentage of alcohol, but that is a question for the legislature. The prohibitory law should be, and always has been by this court, liberally construed for the purpose of preventing its violation by any shift or device. The legislature has always responded quickly to any demand of the people for amendments to the law intended to aid in its vigorous enforcement. If they had intended by the act of 1909 to overturn the decision rendered by Judge Brewer in the *Intoxicating-Liquor Cases,* 25 Kan. 751, which has stood unchallenged ever since, I think the legislature could have found appropriate words for expressing such an intention, and that having failed so to amend the law this court can not legislate and change it notwithstanding the necessity for an amendment.