No. 24,789.

The State of Kansas, *Appellee*, v. Harry Kane, *Appellant*.

SYLLABUS BY THE COURT.

1. Liquor Law—*Sale of Cherry Extract—Evidence of Sales Other Than Those Charged Competent.* Upon a charge of selling intoxicating liquor, the issue being whether cherry extract admitted to have been sold was intoxicating within the meaning of the prohibitory law, it is held not to have been error to admit evidence of sales other than those charged in the information, made to persons who testified that they used it as a beverage and that it was intoxicating.

2. Same—*Proper Instruction.* An instruction that the evidence referred to in the foregoing paragraph could be considered for the purpose of showing the character of the liquor with reference to its intoxicating qualities and the defendant's knowledge thereof is held not to have been erroneous.

3. SAME—*Certain Evidence Not Conclusive of Intoxicating Character of Beverage Sold.* In a prosecution under the prohibitory law testimony of a food analyst as a witness for the state that cherry extract is one of the extracts used in trade, containing no more alcohol than necessary to keep the ingredients in solution, that he would not want to drink it, and that it would make him sick and that he would not answer for its not being fatal to him if he should drink a four-ounce bottle of it, does not conclusively prove that it is not intoxicating liquor within the meaning of the statute.

4. SAME—*Refused Evidence Not Prejudicial.* In view of the introduction of the testimony referred to in the preceding paragraph it is held not to have been prejudicial error to sustain an objection to the testimony of a witness for the defendant that cherry extract had been sold over the state with other extracts.

5. SAME—*Instruction Refused Not Prejudicial.* In the prosecution referred to in the foregoing paragraphs it is held not to have been prejudicial error to refuse to give a requested instruction that the jury might take into consideration various items of evidence concerning the character of the defendant's business.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed October 6, 1923. Affirmed.

*C. A. Smart, Edward T. Riling,* and *John J. Riling,* all of Lawrence, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *A. B. Mitchell,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: Harry Kane appeals from a conviction for the violation of the prohibitory law—upon two counts for the sale of intoxicating liquor and upon one for having it in his possession.

The article for the sale of which the defendant was convicted was wild cherry extract, a preparation put up by the manufacturers for use in cooking. He admitted that he kept and sold it, his defense being that it is not intoxicating liquor within the meaning of the statute. The evidence was that he is a grocer carrying a stock of $10,000 to $15,000, and employing from seven to ten clerks; that the cherry extract was kept with other extracts without concealment, being sold in four-ounce bottles for fifty cents each.

1. The count charging sales alleged that they were made to Hun Woods, on March 18 and 21, 1922. The defendant complains that after Woods had testified to purchases made by him ten other witnesses were permitted to testify that they too had purchased at various times this cherry extract, and that they had drunk it as a

beverage, buying it for that purpose. He argues that the evidence was inadmissible to show the keeping of the cherry extract for sale because that had been admitted in the opening statement of his counsel; that it was not pertinent to any other issue and its purpose and effect was to create a prejudice against him in the mind of the jury. We do not think it was objectionable as tending to show the commission of other offenses than those charged because, the making of numerous sales having been admitted and the real issue being the intoxicating character of the liquor, the mere showing of other sales can hardly have been prejudicial in itself. Moreover if the evidence was pertinent upon other grounds the fact of its tending to show the commission of other offenses would of course not render it incompetent. We regard the evidence as material upon the question whether the cherry extract was intoxicating liquor within the meaning of the statute. A food analyst had testified that it contained 42.3 per cent of alcohol and 2 to 5 per cent of amyl acetate; that it contained no poison; that it was one of the extracts used in trade; that it was used for cooking purposes; that the percentage of alcohol was not appreciably more than necessary to keep the other ingredients in solution; that the witness would not want to drink it, would not answer for its not killing the person drinking it, and would not like to answer for himself after drinking one bottle; and that the amyl acetate "taken in any quantity" would make him sick. Especially in view of this testimony, which perhaps invited a finding that the extract was too unpalatable and dangerous to constitute an intoxicant in a practical sense, the evidence objected to was admissible to show the contrary. Several of the witnesses said not only that they bought and drank it as a beverage, but also that they liked it and that it was intoxicating. According to their statements they bought it frequently. One said maybe two or three times a day; another three or four times a week; another possibly once in two weeks; another once a week; another that he sometimes bought about three bottles at a time; another four or five bottles a week; another at times a bottle a day; another "sometimes we would slip in and buy four or five." A lawyer who was city attorney at the time testified that prior to March 6, 1922, he told the defendant that some one in police court had testified to getting drunk on cherry extract got at his store, and that he called his attention to an opinion of the supreme court regarding the sale of extracts for beverage purposes.

The State v. Kane.

The undersheriff testified to telling the defendant about three weeks before the sales on which conviction was had that they were talking pretty strong about him and he had better cut out selling wild cherry extract or somebody would get him, to which he replied that he was going to quit it. The defendant testified that he had learned that the complaining witness was trying to drink extracts and refused to sell them to him; that he had told the clerks not to sell them to him or to another of the witnesses; and not to sell any to men who were habitual drunkards.

The suggestion is made that there was no evidence that the extract which the witnesses referred to bought was the same as that sold to Woods. There was room for a reasonable inference to that effect from the testimony of the defendant himself as well as that of others.

2. Concerning the testimony of these ten witnesses the court gave the following instruction, of which the defendant complains:

"There is evidence before you of alleged sales of cherry extract to several other persons at or about the time of the sales complained of in the second and fourth counts in the information. This evidence is not for the purpose of proving the sales claimed to have been made in those counts, but is competent for the purpose of proving the knowledge of the defendant with reference to the character of the said cherry extract as an intoxicating liquor, and the purpose for which the alleged purchasers bought the same, and for the further purpose of showing the effect upon a person using the same as a beverage, and for these purposes only."

The jury had been told in the preceding instruction that if the cherry extract was intoxicating within the meaning of the statute "then it would be no defense that the defendant may have sold it in good faith or without any knowledge that Hun Woods intended to or did use such extract for beverage purposes." Although ignorance on the part of the defendant that Woods intended to use the extract as a beverage would not constitute a defense the fact in that regard might have some bearing upon the actual character of the liquor. At all events evidence was admissible upon that issue which tended to show that the liquor was bought and used as a beverage and produced intoxication.

3. It is contended that the conviction should be set aside on the ground that the evidence of the food analyst already referred to showed that the extract was a legitimate article of commerce. The fact that various tinctures, extracts and essences are manufactured and ordinarily sold for other purposes than as a beverage does not

prevent their sale from being a violation of the prohibitory law when in fact they are used as intoxicants and are found to be intoxicating liquors within the meaning of the statute (*The State v. Miller,* 92 Kan. 994, 142 Pac. 979) and this rule has been applied to the case of the particular article sold by the defendant. (*The State v. Wilson,* 110 Kan. 131, 202 Pac. 860.)

4. This question was put by the attorney for the defendant to a salesman for a wholesale grocer called as a witness in his behalf: "I will ask you to state if you know whether or not this has been sold over the state of Kansas with other extracts, as an extract?" He answered "Absolutely." The state objected on the ground that the evidence was incompetent, irrelevant and immaterial and a conclusion of the witness, and the objection was sustained. Complaint is made of the ruling. If the evidence was admissible it was not important enough to constitute reversible error, especially in view of the testimony already referred to which was given by the food analyst as a witness for the state.

5. A final complaint is of the refusal to give this instruction asked by the defendant:

"In considering the evidence in this case, you may and should take into consideration the nature of the business the defendant is engaged in, the location of his business, the character of his trade, the size of his stock, places in his store where the various articles of merchandise are kept and displayed, the frequency or infrequency with which witnesses may have purchased the article referred to in the evidence as 'cherry extract,' the lawful purposes for which said extract might be used, and the probability of its being used for a proper purpose by the persons purchasing it is indicated by the frequency of the purchase, as you may find the facts beyond a reasonable doubt."

The instructions approved in *The State v. Wilson,* supra, and quoted in the opinion in that case were given and we think fairly presented the issues. Granting that it was proper for the jury to take into consideration all the matters recited in the requested instruction it may be presumed that they considered all the evidence submitted and the refusal to direct their attention specifically to these particular items affords no basis for a reversal.

The judgment is affirmed.