State v. Metzger.

No. 26,871.

The State of Kansas, *Appellee,* v. Otto Metzger, *Appellant.*

SYLLABUS BY THE COURT.

1. Intoxicating Liquor—*Unlawful Possession—Sufficiency of Evidence.* In a prosecution for the offense of having unlawful possession of intoxicating liquor, the evidence examined and held sufficient to sustain the verdict and judgment.

2. Same—*Mixtures Properly Designated as Intoxicating Liquor.* A fluid mixture containing a high percentage of alcohol was not improperly designated as intoxicating liquor, although it also contained raisins and other innocuous ingredients which would require the liquid to be drained off before it could be used as a beverage.

3. Same—*Instruction—Right to Make Vinegar.* Error assigned on the failure of the trial court to instruct the jury on the right of the accused to make vinegar considered and not sustained.

4. Same—*Instruction Designating Mixture as Intoxicating Approved.* Under the facts in evidence in this case, an instruction to the jury that any mixture, under the name of vinegar or any other name, capable of being used as a beverage in such quantity as to produce intoxication, was intoxicating liquor correctly .stated the pertinent law.

Appeal from Kingman district court; George L. Hay, judge. Opinion filed November 6, 1926. Affirmed.

*S. S. Alexander,* of Kingman, for the appellant.

*H. E. Walter,* county attorney, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This defendant was convicted of having unlawful possession of intoxicating liquor.

It appears that the sheriff raided defendant's premises, and found in his cellar a ten-gallon jar which contained a decoction composed of water and raisins and having a high percentage of alcohol.

In the prosecution which followed, the chief defense was that the liquid mixture was only vinegar in the course of its making, that it had been set for such legitimate purpose under sanction of the statute (R. S. 21-2112) by defendant's wife, and that defendant personally had nothing to do with it. But there was other testimony, however, that at the time of the search and seizure defendant told

Intoxicating Liquors, 33 C. J. pp. 491 n. 4, 761 n. 53, 774 n. 14, 776 n. 52, 794 n. 96, 801 n. 21.

the sheriff and his deputies he had lately been in a hospital; that his doctor had told him wine would do him good, and that he had made it, and "after he made it, that he did not like it and that he didn't drink it." Defendant also said: "I don't see how they can stick me for that. My doctor ordered me to drink wine."

Under the errors assigned, it is argued that the liquid in the jar was not intoxicating liquor, although "at some future time the contents of this jar could have been made into an intoxicating liquid." The state's expert witness, a chemist, testified that the liquid was an unfinished wine. In August, when it was seized by the sheriff, the liquor tested 13.34 per cent alcohol. After it had lain in the court house unsealed and covered with a cloth until the time of the trial in December of the same year, a considerable percentage of acetic acid was disclosed by a chemical analysis then made. Its presence was accounted for because of the natural tendencies of the liquid when kept unsealed.

Defendant directs attention to part of the chemist's testimony:

"Q. Now will you look at the contents of that jar just as it is there (indicating); is that a mash—is that what you call a mash? A. No, sir.

"Q. What is it then? A. That might be construed as a wort, as a solution containing sugars and so forth. That is considered a wort. The term mash as used by the trade would ordinarily be considered to cover solutions and mixtures of grains rather than of fruit juices from which wines are made.

"Q. Well, you think then that you wouldn't call that a mash that was set with grapes or raisins to make vinegar, would you? A. Well, I hardly think you would call it a mash in either case. That would be covered by the term wort, I believe. . . .

"Q. Well, could you drink it in its present condition in any sense of the word? That is, without being drained off? A. No; as it is, I wouldn't consider it a drink."

Elsewhere, however, he testified:

"I analyzed this sample and found it contained 13.34 per cent of alcohol . . . on the 29th day of August, 1925. . . . And we found nothing in it that would make it unfit for beverage purposes. . . . I would call that liquid an unfinished wine. At the time I made my analysis of it, I examined it also for acetic acid and I found a very small quantity of acetic acid. At that time it didn't give off the odor or have any of the tests of acetic acid, . . . 4th of December, 1925. This time I analyzed the liquid again and my analysis showed 12.8 per cent of alcohol by volume, 2 per cent of acetic acid and some unfermented sugar present."

The chemist explained the presence of considerable acetic acid in the liquid at the time of the trial:

State v. Metzger.

"If the liquid is not closed to the air, but is only covered loosely by a cloth, it is practically the same as if it was uncovered altogether. It goes through two separate stages of fermentation. The first one produces alcohol which will produce from 14 to 15 per cent alcohol as the maximum amount in fruit juices. The alcohol kills the ferment which causes it. When the ferment is killed, of course it ceases to ferment further. And if the bottle or container has the air excluded no further fermentation takes place. . . .

"The leaving of this jar of liquid open and uncovered would cause the further fermentation of acetic acid after the maximum amount of alcohol had been produced, and that would be true even though you take ordinary commercial wine and leave it standing open and exposed to the air; and it will convert any ordinary wine into a large percentage of acetic acid if left standing open. After it reaches the maximum per cent of alcohol it then forms acetic acid where the air is not excluded."

Since part of the chemist's testimony was to the effect that the liquid was not unfit for beverage purposes when it was seized by the sheriff, that it was an unfinished wine and could be drunk and that it contained 13.34 per cent alcohol, and when we keep in mind the statement of the defendant that he had made this wine in compliance with his doctor's orders, this court is bound to hold that the contention that there was no evidence that the contents of the ten-gallon jar was intoxicating liquor cannot be sustained. (*State v. Miller*, 92 Kan. 994, syl. ¶ 2, 142 Pac. 979; *State v. Wilson*, 110 Kan. 131, 202 Pac. 860. See, also, *State v. Kane*, 114 Kan. 426, 219 Pac. 281.)

Defendant assigns error on part of the fifteenth instruction wherein the court told the jury that the liquor in question might be properly designated as intoxicating if it were so in fact even though it had to be strained off before using. This was quite a proper instruction under the facts of this case. It would never do for this court to sanction the idea that a liquid containing a high percentage of alcohol was not intoxicating merely because of the presence of raisins or other innocuous elements requiring the liquid to be drained off before it could conveniently be used as a beverage. (*State v. Wilson*, supra; *State v. Kane*, supra; *State v. Rooney*, 118 Kan. 618, 620, 236 Pac. 826.)

Defendant also complains because the trial court "failed to give a single instruction setting forth the right of one to set or make a wash, mash or wort for vinegar purposes—and failed to instruct the jury of the right of one to make vinegar." The court did give this instruction:

"It is one of the contentions of the defendant that he had nothing to do with the placing of the contents in the ten-gallon jar which was found in the cellar of his home, and that he knew nothing concerning same, until ·after his arrest, except that he had been informed by his wife that the contents of said jar was set for the purpose of making vinegar.

"In this connection you are instructed that if you find and believe from the evidence that the defendant had nothing to do with placing the contents in the jar in question at the place where it was found and that he had no knowledge concerning its contents, but that he acted or omitted to act upon the information given to him by his wife, which information he actually believed to be true, and did not know otherwise, and. that he in no wise assisted, aided or abetted his wife in the unlawful possession of intoxicating liquors, if such were intoxicating liquors, then I say to you that the defendant would not be guilty under the law and you should so find."

Such instruction adequately covered the defense outlined by defendant's counsel and accorded with the testimony adduced in defendant's behalf, and the omission of any further reference to the right and privilege of making vinegar sanctioned by the statute or that the making of vinegar is not forbidden by law was nonprejudicial.

Exception is also taken to an' instruction wherein the court told the jury that any mixture under the name of vinegar or any other name, capable of being used as a beverage in such quantity as to produce intoxication would be intoxicating liquor. Its quality as an intoxicant and its availability for use as a beverage being determined, it was quite immaterial what it was named. The criticized instruction was a correct statement of pertinent law.

A review of this case discloses no material error, and the judgment is affirmed.