No. 31,265

THE STATE OF KANSAS, *Appellee,* v. OTTO METZGER, *Appellant.*

(23 P. 2d 481.)

Opinion filed July 8, 1933.

*H. E. Walter,* of Kingman, for the appellant.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, and *Paul R. Wunsch,* of Kingman, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Otto Metzger was charged as a persistent violator of the liquor law, who maintained and assisted in maintaining a still. He was convicted and appeals. The contention is there was no evidence warranting an inference of guilt.

The still was found on the farm of defendant's father-in-law, Rudy Kopf. The Kopf farm is south of a road. Defendant lives on a farm on the north side of the road and west of the Kopf farm. Defendant said he lived about half a mile from Kopf.

Defendant and his father-in-law had an illicit-liquor complex. In 1925 defendant was convicted of unlawful possession of liquor, which he said he made to drink because his doctor ordered him to drink wine. (*State v. Metzger*, 121 Kan. 837, 250 Pac. 258.) In 1929 federal authorities found a still in the barn of defendant's farm. He said it belonged to others, but he was convicted and served time in the federal penitentiary. He was released in July, 1932. In August a still was found in the silo on Kopf's farm. The still in question was found on December 2, 1932.

The still was found by the sheriff in Kopf's barn. The barn was about 100 feet long and 60 feet wide. A driveway extended the full length of the barn, and next to the driveway was a manger. The manger was full of hay. The sheriff had a long iron rod and, while poking the rod into the hay in the manger, he struck something which proved to be a ten-gallon keg of liquor. When the sheriff removed the hay to get at the keg, he found a sort of tunnel, the entrance to which was stuffed with hay. The tunnel went through the manger and was large enough for a man to crawl through it. The sheriff crawled through the tunnel to about the middle of the barn and came out in a room about twenty feet square and six or seven feet high. The room was surrounded with hay five or six feet in thickness and was covered with hay to a depth of some fifteen or twenty feet. The tunnel was the only means of entrance to the room. In the room were fifty or sixty gallons of corn whisky, some mash set, and a complete still, including a burner. A ventilator concealed by the hay extended to the roof of the barn.

When the sheriff arrived at the Kopf farm, he found defendant and Kopf at the windmill. Kopf had a bucket of water in his hand. The sheriff announced he had a search warrant for the place. Kopf said he would take the water to the house and said something to defendant in German, a language the sheriff did not understand. Defendant started toward the barn, and the sheriff followed him. Defendant entered the driveway at the south door, picked up a pitchfork, and walked to the north end of the barn. As he went along he would pick up a little loose scattered hay and throw it into the manger. At the north end of the barn he climbed to the top of a pile of hay and threw down some hay. Then he went out of the north door, crawled over a wire fence and went toward the road. Afterwards, when the sheriff went to the house, defendant was not there. The premises were searched, the vicinity was searched, de-

fendant's premises were searched, and he could not be found. That night the sheriff returned to the Kopf home and at about ten or eleven o'clock found defendant there. Kopf had fled and has not yet been apprehended.

The sheriff arrived at the Kopf farm about noon and, as indicated, found defendant there with Kopf. Defendant explained his presence at Kopf's. Some bridgework on his teeth had become loose. He was going to Harper to have it fixed. He and his wife drove over to Kopf's to see if the Kopfs wanted to go also, and defendant and his wife had just arrived when the officers came. There is nothing in the record to show whether those teeth ever have been fixed.

When the sheriff announced his mission, defendant took an immediate interest in the barn and the part of the barn in which the keg of liquor lay and upon which the tunnel to the still opened. He explained why he became interested in the barn. He said Kopf told him in German to throw down some hay for the cattle. This might have been a good explanation but for these facts: The mangers were already filled with hay, and the hay which he threw down was not needed for cattle. Fed cattle leave indications of their presence, and there were no signs that cattle were fed there. In fact, there were no cattle about to be fed, and the hay in the barn concealed a still and a large quantity of liquor.

There was room for inference defendant knew all about the still and the keg of liquor, went to the barn to see if the keg and the tunnel might be insufficiently concealed, and if so, casually to toss hay where it would effect concealment.

Concede that defendant went to the barn at Kopf's suggestion. As a practical matter, stills may not be successfully maintained in the open. It is essential to operation that they be well hidden, and he who attends to concealment contributes to maintenance. When defendant went to the barn, the sheriff had discovered nothing. Maintenance of the still had not ceased but was continuing right along, and, if Kopf were principal, defendant was aiding him by acts designed to insure uninterrupted maintenance. One who aids and abets may be charged, tried, and convicted as principal, and the court so informed the jury by an instruction concerning which no complaint is made.

A determined and resourceful sheriff with a search warrant may

ferret lurking places and, notwithstanding everything looked all right in the barn, defendant fled. While he did not leave for parts unknown, he quickly left the Kopf place and went into hiding.

Hasty departure indicative of guilt may be explained, and the defendant explained his conduct. It will be recalled he arrived at Kopf's place near noontime on the way to town to get his teeth fixed. After he left the barn he went to the house. His car was gone. Mrs. Kopf had high blood pressure. After the sheriff came she had a fainting spell, and defendant's wife took the car to go to her home and get some medicine. Whether fleeing Kopf was picked up on the way does not appear. Apparently defendant could not wait with his stricken mother-in-law until his wife came back with medicine, and could not wait for the car so he could go on to town and get his teeth fixed. So, in utter ignorance of the existence of the still in the barn, and conscious of the rectitude of his conduct in throwing down hay for the cattle, he just started to walk back home.

There was more balderdash, which it is not necessary to relate. There is good reason to believe defendant was interested in maintenance of the nuisance. That he assisted in its maintenance was well proved.

The judgment of the district court is affirmed.

HARVEY, J. (dissenting): As I view this record, the conviction rests only on suspicion and the fact that defendant had been convicted in the state court in 1925, and later in the federal court, of violations of the intoxicating-liquor law. I find no evidence in the record, certainly no substantial evidence, that defendant assisted in any way in maintaining the still in question on the Kopf place, or even that he knew it was there.

SMITH and THIELE, JJ., concur in this dissent.