THE STATE OF KANSAS V. CHARLES JENKINS.

1. CHALLENGE TO ARRAY— *When Sustained, When Not.*  A challenge to an array of jurors ought not to be sustained on account of mere irregularities in the drawing of the jurors, or mere informalities on the part of the officers charged with the drawing of the same; yet where the statute specifically prescribes the class or list of persons from which the jurors are to be selected, the failure on the part of the officers to draw the jurors from the class or list prescribed is a sufficient ground to sustain a challenge to the array.

2. BEER, *Presumed to be Intoxicating; Incompetent Evidence.*  In the absence of evidence to the contrary, beer will always be presumed to be an intoxicating liquor. (*The State v. Teissedre*, 30 Kas. 476.)  And it is not competent for a defendant charged with violating the prohibitory liquor law by selling beer to prove that under a given formula a non-intoxicating liquor may be made, which is sometimes called beer, unless evidence is also offered tending to show that the liquor or beer sold was made from such formula.

### *Appeal from Osage District Court.*

PROSECUTION for a violation of the prohibitory liquor law. The opinion states the material facts.  From a judgment against him at the October Term, 1883, the defendant, *Jenkins,* appeals.

*Ellis Lewis,* for appellant.

*W. A. Johnston,* attorney general, and *Edwin A. Austin,* for The State.

The opinion of the court was delivered by

HORTON, C. J.: An information was filed against the appellant, charging him in eight counts with violating the prohibitory liquor law.  The jury found the appellant guilty upon the first, second and third counts of the information, and returned a verdict of not guilty as to the other counts.  He was sentenced to pay a fine of $150 upon the first count, $200 upon the second count, and $250 upon the third count, together with the costs of the prosecution, and ordered to be committed to jail until the fine and costs were paid.

It is claimed that the jurors for the term of court at which the defendant was tried were improperly drawn and summoned. The regular panel for the October term of court for 1883 — the time of trial — was drawn from the assessment rolls of 1883. The statute provides as follows:

"The trustee of each organized township, and the mayor of any city not included in the corporate limits of any township, shall, at his office, during the month of April of each year, make a list of persons to serve as jurors for the ensuing year as hereinafter provided." ( Comp. Laws of 1879, ch. 54, § 1. )

Section 2 of said chapter provides:

"They shall select from those assessed on the assessment roll of the preceding year suitable persons having the qualifications of electors, and in making such selection they shall choose only those who are not exempt from serving on juries, and who are possessed of fair character and approved integrity, and in possession of their natural faculties, and not infirm or decrepit, and who are well informed, and free from legal exceptions."

By the statute, the jurors for the October term of court for 1883 should have been selected from those assessed on the assessment rolls of the preceding year ( 1882 ), and not taken from the assessment rolls of 1883. The question is therefore presented, whether the appellant's challenge to the array should have been sustained. It is insisted on the part of the appellant that as the statute prescribes from what persons the jury should be constituted, and who shall compose the jury, its provisions are mandatory. On the other hand, it is contended that the provisions relating to the drawing of jurors have not in view the benefit of litigant parties, and form no part of the system to procure an impartial jury; that they establish a mode of distributing jury duties among persons in the respective counties subject to that kind of service; that they merely provide for rotation in jury service, and are directory only. This latter view is supported by *The State v. Massey*, 2 Hill ( S. C. ) 379, and the opinion in *Rafe v. The State*, 20 Ga. 764. There are also other authorities in the same direction. ( Thompson & Merriam on Juries, §§ 47, 63, 134, 143. ) We think the better rule, and the one most likely to do justice, is, that while mere

irregularities in the drawing of jurors, or mere informalities on the part of the officers charged with the drawing, ought not to be a sufficient ground for sustaining a challenge to an array, yet it is otherwise where the essential provisions of the statute have been palpably disregarded. (*The State v. Yordi*, 30 Kas. 221; Thompson & Merriam on Juries, § 143.) Therefore, where the statute specifically prescribes the class or list of persons from which the jurors are to be selected, the failure to draw the jurors from such class or list is sufficient ground to quash the panel. (*Jones v. The State*, 3 Blackf. 37; *Baker v. Steamboat*, 14 Iowa, 214; Anon. 1 Browne [Pa.] 121; *McClosky v. People*, 5 Park. Cr. R. 308.)

The legislature in this state has said that certain persons shall be selected as jurors; the officers required to make the list in this case have said other persons shall be returned as jurors. Therefore there was a substantial departure from the statutory mode in making the list of persons to serve as jurors for 1883. This disregard of the statute cannot be allowed. The requirements of the statute as to the making of a list of persons to serve as jurors, and the selection of the panel therefrom, are in the nature of a privilege to the accused, and he has the right to insist that there shall be a substantial compliance with the law. The neglect or refusal of the officers to comply with the statute in the listing and selection of jurors must be affirmatively shown, and the objection to the panel must be made before the jury are sworn to try the issues in the case. When the accused goes to trial before a jury without objection, he waives any irregularity or informality in the drawing, summoning and impaneling of the same. In this case, for the reasons heretofore stated, the court erred in disallowing and overruling the challenge and objections made to the panel of the jury. As a new trial must be ordered on account of the conclusion reached, we deem it necessary to refer to another alleged error.

One, Prof. Whitman, testified on the part of the appellant that there are different kinds of beer, and that he knew a formula by which beer might be made which is not intoxicating. The formula for making this non-intoxicating beer is:

"Loaf sugar, 2 drachms; bi-carbonate of soda, 26 grains; citric acid, 30 grains; tartar or tartaric acid (either one), 28 grains." The state moved to strike out this and any other like testimony as having no connection with the case, and the court sustained the motion. In this there was no error. There was no evidence showing or tending to show that the beer sold by the appellant was prepared from the formula testified to by Prof. Whitman, and in the absence of this, the evidence offered was wholly irrelevant. Beer, according to Webster, is a fermented liquor made from any malted grain, with hops and other bitter flavoring matter. " When, therefore, the word 'beer' is used in court by a witness, the court will take judicial notice that it means malt and intoxicating liquor, or such meaning will be a presumption of fact, and in the meaning of the word itself there will be *prima facie* proof that it is malt or intoxicating liquor that is meant." ( *The State v. Teissedre*, 30 Kas. 477, 479, 484.) When the defense is made that the beer sold is spruce beer, or ginger beer, or any other non-intoxicating beer, evidence thereof is competent; but the mere fact that under some formula a non-intoxicating liquor may be made, which is sometimes called beer, is wholly irrelevant, in the absence of proof that the liquor or beer sold was made from the formula.

For the error of the court in overruling the challenge to the array, the judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.