No. 31,505

THE STATE OF KANSAS, ex rel. MAX WYMAN, County Attorney of Reno County, *Appellee*, v. FRED OWSTON et al., *Appellants.*

(23 P. 2d 616.)

Opinion filed July 13, 1933.

*Eustace Smith* and *C. E. Chalfant,* both of Hutchinson, for the appellants.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, *Max Wyman,* county attorney, and *John Fontron,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought to enjoin defendants from maintaining a liquor nuisance. Judgment was for plaintiff. Defendants appeal.

Defendants own and operate two sandwich stands in Reno county. On June 17, 1933, they began selling a beverage commonly known

as 3.2 per cent beer. On June 22, 1933, the state obtained a temporary injunction enjoining defendants from keeping or selling intoxicating liquors at the stands in question.

The defendants filed a verified answer in which they denied that they kept, sold or bartered any intoxicating liquor on the premises, or had ever kept or sold intoxicating liquor. The answer further alleged that the maintenance of the premises in question, a sandwich and soft-drink stand, was the sole means of livelihood of defendants, and that the attempt on the part of the state to enjoin its continued maintenance and operation was in violation of their privileges and immunities as citizens of the United States, and in contravention of the fourteenth amendment to the constitution of the United States.

Hearing was had on the pleadings thus made up and a permanent injunction was granted.

The proof was that defendants sold some bottles of a beverage. One bottle contained 2.3 per cent alcohol by weight and 2.9 per cent by volume; the other contained 2.47 per cent of alcohol by weight and 3.1 per cent of alcohol by volume. The bottles had labels on as follows:

"Does not contain more than 4 per centum of alcohol by

Contents
12 fluid ounces
Permit Dist. No.
7-U-712

Tax paid at the rate prescribed by internal revenue law

BLATZ

OLD HEIDELBERG BEER

Blatz Brewing Co., Milwaukee, Wis.

Prosit

Trade Mark Reg. U. S. Pat. Off.

BREWED UNDER THE FORMULA OF A FAMOUS OLD GERMAN BEER

Blatz Brewing Co."

It was agreed that the beverage contained in the bottles was a malt beverage commonly designated as 3.2 beer by a recent act of congress.

At the conclusion of the state's case the defendants demurred to the state's evidence. This demurrer was overruled. They then offered to prove that the beverage in question was not intoxicating as a matter of fact. This offer was rejected. The trial court held the sale of the beverage in question, it being a malt beverage, was in violation of the prohibitory law of Kansas, and particularly R. S.

21-2101 and R. S. 21-2109, and that it was not competent for defendants to show that it was not intoxicating as a matter of fact.

It is from that ruling that this appeal is taken. At the outset of our discussion of this case it should be borne in mind that the sole question to be decided is whether defendants had a right to introduce this evidence. This question will be answered when we have decided whether the sale of any malt liquor, regardless of its intoxicating qualities, is forbidden by the Kansas statutes.

R. S. 21-2101 is as follows:

"It shall be unlawful for any person to directly or indirectly manufacture, sell, barter, or give away, furnish or keep or have in his possession for personal use, or otherwise any spirituous, malt, vinous, fermented or other intoxicating liquors . . ."

R. S. 21-2109 is as follows:

"All liquors mentioned in Laws of 1917, ch. 215, sec. 1, as amended, shall be construed and held to be intoxicating liquors within the meaning of this act."

R. S. 21-2101 was first enacted in 1881, when the business of regulating the liquor traffic was in its infancy. It was section 1 of chapter 128, Laws of 1881, and read as follows:

"Any person or persons who shall manufacture, sell or barter any spirituous, malt, vinous, fermented or other intoxicating liquors, shall be guilty of a misdemeanor and punished as hereinafter provided: *Provided, however,* That such liquors may be sold for medical, scientific and mechanical purposes, as provided in this act."

R. S. 21-2109 has descended from section 10 of chapter 128 of the Session Laws of 1881. That section was as follows:

"All liquors mentioned in section one of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this act."

The first change that was made in section 1 of chapter 128 was in 1909. The legislature of that year took out the proviso that such liquors might be sold for medical, scientific and mechanical purposes as provided in the act (Laws 1909, ch. 164, § 1).

In 1917 the legislature passed chapter 215 of the Session Laws of 1917. That chapter is known as the "bone-dry law." It is in part as follows:

"It shall be unlawful for any person to keep or have in his possession, for personal use or otherwise, any intoxicating liquors, or permit another to have or keep or use intoxicating liquors on any premises owned or controlled by

him, or to give away or furnish intoxicating liquors to another, except druggists or registered pharmacists as hereinafter provided. . . ." (§ 1.)

When the statutes were revised in 1923, section 1 of chapter 164 of the Laws of 1909 was combined with section 1 of chapter 215 of the Laws of 1917 to make R. S. 21-2101. It is worthy of note that when the bone-dry law was enacted the legislature simply used the term "intoxicating liquors" and did not use the description "spirituous, vinous, malt or fermented" as had been used in earlier acts. It has been seen that R. S. 21-2109 was originally section 10 of chapter 128 of the Session Laws of 1881. It was next enacted as section 4 of chapter 164 of the Laws of 1909, as follows:

"All liquors mentioned in section 1 of this act shall be construed and held to be intoxicating liquors within the meaning of this act." (§ 4.)

When it was written into the revision of 1923 the legislature referred to the words as used in section 1 of chapter 215 of the Session Laws for 1917. We have seen that this section simply used the term "intoxicating liquors."

These sections have been interpreted many times.

In *State v. Teissedre*, 30 Kan. 476, the state brought a prosecution under section 13 of chapter 128 of the Session Laws for 1881. This was the section that provided for injunctions. The court said:

"It was no error for the court below to instruct the jury 'that beer is presumed to be intoxicating, until the contrary is proved.' In the absence of evidence to the contrary, beer will always be presumed to be an intoxicating liquor." (p. 484.)

See, also, *State v. Jenkins*, 32 Kan. 477, 4 Pac. 809, to the same effect.

In the opinion in the Teissedre case, *supra*, the case of *State v. Volmer*, 6 Kan. 371, was cited. That was a prosecution for a violation of section 3 of chapter 35 of the General Statutes of 1868. The language of that section is as follows:

"Any person, without taking out and having a license as grocer, dramshop keeper or tavern keeper, who shall, directly or indirectly, sell any spirituous, vinous or fermented or other intoxicating liquors . . ."

It will be noted that this act says "spirituous, vinous, fermented or other intoxicating liquors." The proof was of a sale of "lager beer." The court said:

"Under the statutes of this state all fermented liquor is presumed to be intoxicating. If the defendant denies that the fermented liquor sold by him is intoxicating, it devolves upon him to remove the presumption of the law by evidence."

It will be seen that this early in the history of regulating the liquor traffic, the uniform judicial interpretation was that what was sought to be regulated at first and what was later forbidden was traffic in liquor that was intoxicating as a matter of fact.

As far as the question we are considering is concerned, a comparison of section 13 of chapter 35 of the General Statutes of 1868, with section 1 of chapter 128 of the Session Laws for 1881, and an examination of the cases interpreting them, will show that the addition of the word "malt" to the language in the act of 1881 did not bring any liquor within the act that would not have been in it if the language of the act of 1868 had been used.

The act of 1881 was interpreted for the first time in the *Intoxicating Liquor Cases,* 25 Kan. 751. The question there considered in the main was whether certain toilet preparations came within the act and whether the act covered certain preparations which the court denominated "bitters, cordials, tonics, *et cetera.*" The opinion was written by Justice Brewer, and the language used by him could hardly be improved upon. The opinion said:

"Now the cases before us group themselves into three classes; and the same division is far-reaching and of general application. The first embraces what are generally and popularly known as intoxicating liquors, unmixed with any other substances. Thus in one case the sale of brandy is charged. The second includes articles equally well known, standard articles, and which, while containing alcohol, are never classed as intoxicating beverages. Their uses are culinary, medical, or for the toilet. They are named in the United States dispensatory and other similar standard authorities; the formulæ for their preparation are there given; their uses and character are as well recognized and known by their names as those of a horse, a spade or an arithmetic. The possibility of a different and occasional use does not change their recognized and established character. A particular spade may be fixed up for a parlor ornament, but the spade does not belong there. So, essence of lemon may contain enough alcohol to produce intoxication—more alcohol proportionately than many kinds of wine or beer. It is possible that a man may get drunk upon it, but it is not intoxicating liquor. Bay rum, cologne, paregoric, tinctures generally, all contain alcohol, but in no fair or reasonable sense are they intoxicating liquors or mixtures thereof. The third class·embraces compounds —preparations—in which the alcoholic stimulant is present, which are not of established name and character, which are not found in the United States dispensatory, or other like standard authorities, and which may be purely medicinal in their purpose and effect, or mere substitutes for the usual intoxicating beverages. If not intoxicating liquors, they may be 'mixtures thereof' within the scope of the statute. Here belong many of the patent

medicines—the bitters, cordials, and tonics of the day. Here also are such compounds as that charged in one of the informations before us—a compound of whisky, tolu, and wild cherry.

"Now, in reference to these several classes, we think these rules may be laid down: The first class is within and the second class without the statute; and the court, as a matter of law, may so declare. It is unnecessary, in charging the sale of whisky or brandy, etc., to allege that it will produce intoxication; nor will it bring the sale of essence of lemon within the statute to allege that such essence will produce intoxication. The courts will take judicial notice of the uses and character of these articles. You need not prove what bread is, or for what purposes it is used. No more need you in respect to whisky or gin on the one hand, or cologne or bay rum on the other. They are all articles of established name and character. In reference to the third class, the question is one of fact, and must be referred to a jury. If the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute." (p. 766.)

It was this language that gave rise to the division of the liquors upon which the statute operates into three classes. What is more interesting to us, however, are the statements made throughout the opinion, some of which read:

"Now, what was the evil sought to be remedied by this statute, and the constitutional amendment of which it was an outgrowth? It was the use of intoxicating liquors as a beverage."

"The use of intoxicating liquors as a beverage was the evil, and the statute must be read in the light thereof. It is intended to put a stop to such use, and limit the use to the necessities of medicine."

"The courts may not say as a matter of law that the presence of a certain per cent of alcohol brings the compound within the prohibition, or that any particular ingredient does or does not destroy the intoxicating influence of the alcohol, or prevent it from ever becoming an intoxicating beverage." (pp. 764, 766, 768.)

It would seem that this case leads to the conclusion that the prohibitory law when passed was intended to place a ban on traffic in beverages that were intoxicating as a matter of fact. With this picture in our minds of what the courts thought about the law when it was first enacted and put into effect, let us examine the march of events as the decisions of this court have recorded it. The court had the question before it in the case of *City of Topeka v. Zufall*, 40 Kan. 47, 19 Pac. 359. This was a prosecution for a violation of a city ordinance against the sale of intoxicating liquor. The following instruction was given:

"There has been some evidence tending to prove that the liquor called peach cider taken away from the defendant's place of business, about the time of the defendant's arrest in this case, contained about six per cent of alcohol. This evidence is competent to be considered with the other evidence in the case for the purpose of enabling the jury to determine whether the liquor called peach cider contained alcohol sufficient to produce intoxication when used as a beverage. I however instruct you that if you find from the evidence, beyond a reasonable doubt, that the liquor sold by defendant to Stone (if you find any such liquor was sold to him by defendant) contained six per cent of alcohol, then I instruct you that such liquor or fluid is intoxicating within the meaning of this ordinance." (p. 48.)

The instruction was held bad and the following language was used:

"Can the instruction be justified on the theory that the presence of a certain per cent of alcohol makes the compound intoxicating, and that the per cent is within the common knowledge? There are a few general considerations and established propositions that seem to negative such a claim, and among them are the following: That the courts of this country will take judicial notice of all facts of common knowledge, is a rule which has the authority of Greenleaf and all other text-writers on the law of evidence, and is to be often found in the reported cases; but what are facts of common knowledge is often difficult of solution, because they are of such variety and diversity, and from this cause it may be safely said that there is no general rule yet established which governs all phases of the subject." (p. 49.)

That opinion was written in 1888. In 1890 the same question was before this court in *State v. Schaefer,* 44 Kan. 90, 24 Pac. 92. That case involved a sale of hard cider. There was evidence as to the amount of alcohol in the cider in question. The defense was that it was not intoxicating. The court said:

"Hard cider is cider excessively fermented; and, therefore, presumptively, hard cider is not only a fermented liquor, but intoxicating. Whatever is generally and popularly known as intoxicating liquor may be so declared as a matter of law by the courts. Under the statute, all fermented liquor is presumed to be intoxicating; and if a defendant denies that the fermented liquor sold by him is intoxicating, it devolves upon him to remove the presumption of law by evidence." (p. 94.)

To the same effect and written about the same time is *State v. McLafferty,* 47 Kan. 140, 27 Pac. 843; and *State v. Lindgrove,* 1 Kan. App. 51.

In 1893 the question was again before this court in *State v. May,* 52 Kan. 53, 34 Pac. 407. The evidence in that case was that defendant sold "hop tea" and "B. B." in bottles. The court gave the jury the following instruction:

"4. There is no dispute in this case but that the defendant sold bottles of liquor called 'hop tea' and 'B. B.,' and the question for the jury to determine in this case is, whether or not the liquors so sold were intoxicating liquors.

"5. I instruct you that the statute makes spirituous, malt, vinous and fermented liquors intoxicating; and if you believe from the evidence in this case, beyond a reasonable doubt, that the said liquors known as 'hop tea' and 'B. B.' are either spirituous, malt, vinous or fermented liquors, it is your duty to find such liquors intoxicating, whether they produce actual drunkenness or not.

"6. Beer is a malt liquor, and intoxicating within the meaning of the law; and if you believe from the evidence, beyond a reasonable doubt, that the liquors sold were made from beer and water, the principal part thereof being beer, or enough beer used to cause an infusion of malt into the liquor sold, and so much so that the said liquor becomes a malt liquor, it is your duty to find that it is an intoxicating liquor, within the meaning of the law." (p. 54.)

The court held the instruction to be erroneous and said:

"These instructions do not correctly state the law. The statute does not make any liquor intoxicating, but prescribes the punishment for the sale of those that are really so. The presence of malt in any compound does not necessarily make it an intoxicating liquor at all. It is not the presence or absence of any one particular ingredient that brings the compound within the prohibition of the statute, as was said by this court in *Intoxicating Liquor Cases,* 25 Kan. 767:

. . . . . . . . . . . . .

"If the article sold was beer, it was not incumbent on the state in the first instance to show that it was intoxicating; but the defendant had a right to show, if he could, that it was not intoxicating. If it was not beer, or any other liquor presumed to be intoxicating, it was incumbent on the state to show in the first instance the intoxicating qualities of the liquor sold." (pp. 55, 56.)

In 1897 the court of appeals dealt with this question in *City of Fontana v. Grant,* 6 Kan. App. 462. The city of Fontana had passed an ordinance in which the following paragraph appeared:

"It shall be unlawful for any person, within the corporate limits of the city of Fontana, Kan., to sell or barter hop tea, hop tonic, hop tea tonic, or any other liquors containing alcohol in insufficient quantities to intoxicate and commonly used as a beverage." (p. 462.)

It will be noted that the ordinance forbids the sale of malt liquor regardless of whether it was intoxicating. The court held that the city received its authority to regulate such things from the legislature; that the legislature did not have power to forbid the sale of nonintoxicating beverages. Hence, the city should not do so.

There never was in this state a more untiring and zealous advocate of prohibition than the late lamented John Marshall. Among his outstanding contributions to the cause of prohibitory-law enforce-

ment was a book he wrote in 1912. It was a compilation and instructive commentary upon prohibition in Kansas. He had this to say about the question with which we are dealing:

"Beer is presumed to be intoxicating. (*State v. May*, 52 Kan. 53, 34 Pac. 407; *State v. Teissedre*, 30 Kan. 476, 2 Pac. 650; *State v. Jenkins*, 32 Kan. 477, 4 Pac. 809.) And in the absence of evidence to the contrary, it will always be presumed to be intoxicating liquor. (*State v. Teissedre*, 30 Kan. 476, 2 Pac. 650.) This presumption may be overcome by evidence." (See Marshall's Kansas Intoxicating Liquors Laws, p. 228.)

The next outstanding pronouncement on this question is *State v. Miller*, 92 Kan. 994, 142 Pac. 979. The state argues in this case that the opinion in *State v. Miller* sustains its position because it holds that the classification of liquors as laid down in *Intoxicating Liquor Cases*, 25 Kan. 751, was abrogated by the act of 1909 heretofore cited. The actions in the Miller case were brought to restrain defendants from maintaining liquor nuisances. The evidence was that the defendants were making and selling Jamaica ginger, and that this was being widely used as an intoxicating liquor. That is, people were buying it and getting drunk on it. The court pointed out that in the *Intoxicating Liquor Cases* the court had held that such tinctures belonged in what that opinion designated as the second class of liquors, which the statute did not cover. It then held that Jamaica ginger was included in the words in the act as follows: "spirituous, vinous or fermented liquor." The language upon which the state relies is as follows:

"Liquors belonging to the first class there described, such as whisky, brandy, gin, wine, beer, and the like, are still to be construed to be intoxicating." (p. 1004.)

However, the court, in the Miller case, was not discussing the question we have here. The defendant in that case was asking the court to overlook what everybody knew—that is, that Jamaica ginger was commonly sold and used as an intoxicating liquor, just because in 1881, some thirty years previously, the court had predicted that tinctures such as Jamaica ginger would never be used as beverages. The court refused to do this and simply held that plain whisky, brandy, gin, wine or beer or other spirituous, malt, vinous or fermented liquors of the kind specifically mentioned in the statute shall be construed and held to be intoxicating. At the time that opinion was written the beer commonly sold was intoxicating, and every grown person knew it. That opinion, however, could not be

cited as an authority that a defendant charged with selling beer could not offer evidence to prove that what he sold was not intoxicating.

In *State v. Trione,* 97 Kan. 365, 155 Pac. 29, this question was considered. It was a liquor injunction case. The defendant argued that the evidence was not sufficient to sustain a finding that what was sold was intoxicating. Witnesses testified that it looked like beer, tasted like beer, and the witness believed it was beer. The court held that the evidence was sufficient. Justice Marshall, speaking for the court, said:

"This was sufficient to justify the court in finding it was an intoxicating liquor under the law of this state. Malt liquors are presumed to be intoxicating." (p. 366.)

In *State v. Walbridge,* 123 Kan. 386, 255 Pac. 83, the court again passed on this question. The argument was that the evidence was not sufficient to prove that the liquor which defendant had in his possession was intoxicating. The court said:

"The statute provides that malt fermented liquor shall be presumed to be intoxicating. (R. S. 21-2109, 21-2101.) The liquor which defendants made was malt fermented liquor, one sample contained more than five per cent grain alcohol, and when the undersheriff asked Walbridge what he had been making he said he had been making beer for his own use." (p. 386.)

The state cites and relies upon *City of Topeka v. Heberling,* 134 Kan. 330, 5 P. 2d 816. That was a prosecution for having home brew in possession. The particular batch of home brew that was found tested 4.9 per cent alcohol. The defendant argued that this liquor was not intoxicating when seized, because it had just been made, but became so afterwards.

The point relied upon for reversal was the following instruction:

"A liquid such as that offered in evidence in this case, and called 'home brew,' is an intoxicating liquor within the meaning of the city ordinance when it may be taken in sufficient quantity to produce intoxication, when used as a beverage. Such a liquid, when containing three or more per cent of alcohol, would be considered as intoxicating. You will bear in mind that one of the claims of the defendant is that the 'home brew,' when taken possession of by the officers, was not intoxicating, but if intoxicating at all at any time, became so after the same was taken from the possession of the defendant. If, therefore, you find that the 'home brew' was not intoxicating at the time seized by the officers, although it became so afterwards, then you would have to find the defendant not guilty." (p. 330.)

The state calls special attention to the following language: "Such

a liquid, when containing three or more per cent of alcohol, would be considered as intoxicating."

This sentence should be considered in connection with the sentence just preceding it, as follows:

"A liquid such as that offered in evidence in this case, and called 'home brew,' is an intoxicating liquor within the meaning of the city ordinance when it may be taken in sufficient quantity to produce intoxication, when used as a beverage."

It was not intended by the district court or by this court to fix a percentage standard for determining intoxicating quality without regard to fact. What the sentence meant was that, for the purposes of the case on trial, such a liquid, when containing three or more per cent of alcohol, would be considered—that is, presumed—to be intoxicating, in the absence of proof to the contrary.

We have concluded after an examination of the authorities here cited—an examination that has taken us through the history of prohibition in this state—that what the legislature had in mind when it started in to regulate dramshops in 1868 and when it enacted the prohibitory law of 1881 was first, the regulation, and, eventually, the prohibition, of traffic in liquor that was intoxicating as a matter of fact. Many cases have been cited wherein it has been held that beer was presumed to be intoxicating, but never one that has held that this presumption could not be contradicted by evidence. Throughout the years this has been the law as announced by this court. It has been seen that the question was squarely passed on by this court when it was held that the instructions which took this question of fact from the jury were erroneous. Had the legislature been dissatisfied with that interpretation of the statute it would have been changed before this. The matter could have been settled by the legislature providing just what per cent of alcoholic content would render a beverage intoxicating. The legislature could easily have provided that any malt liquor should not be sold regardless of whether it was intoxicating. Neither has been done.

What has been said in this opinion must not be construed as being a holding that 3.2 beer may be sold in this state. It may very well be that the trier of the facts will hear evidence as to the alcoholic content of the beer and then will hear other evidence as to whether or not it is intoxicating and will determine, as a conclusion of fact, the beer offered in evidence is intoxicating. To determine that question of fact is the duty of the trier of the facts.

All this opinion holds is that in a prosecution for the sale of beer, or in an action to enjoin the maintenance of a liquor nuisance on account of the sale of beer, the defendant has a right to introduce evidence tending to prove that what he sold was not intoxicating as a matter of fact.

The judgment of the trial court is reversed with directions to grant the defendant a new trial in accordance with the views herein expressed. It is so ordered.