## UNITED STATES v. ROBASON.
### No. 6908.

District Court, D. Kansas,
First Division.

Feb. 18, 1941.

S. S. Alexander, U. S. Atty., of Topeka, Kan., for the government.

Hal C. Davis, of Topeka, Kan., for defendant.

HOPKINS, District Judge.

The sole question presented here is the sufficiency of a Kansas statute attempting to make effective the United States statute prohibiting the transportation of intoxicating liquor into a dry state.

A jury was waived and the trial and case submitted to the Court for decision. The indictment charges that on or about November 26, 1940, the defendant imported about 125 pints of whiskey from Nebraska into Kansas. The facts are substantially these:

Defendant stated that he had transported from Falls City, Nebraska, to his home in Rossville, Kansas, the liquor described in the indictment. He also stated that he had lived in Rossville for 40 years; had been operating a cafe for four years there; had been hauling liquor from Nebraska to his cafe in Rossville in periodical loads similar to the one charged in the indictment since 1938; that he retailed the liquor at his cafe in Rossville; that he sold anywhere from six to two dozen pints of whiskey per week. And so the question presented is whether the Laws of Kansas G.S.1939 Supp. 21-2109, 2109a and 21-2190, are a sufficient compliance to make effective the Liquor Enforcement Act of 1936, 27 U.S.C.A. § 221, and subsequent sections, in so far as importing intoxicating liquors into Kansas is concerned.

Section 2 of the Twenty-First Amendment to the Constitution of the United States, which repealed the Eighteenth Amendment, reads: The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Pursuant to this constitutional provision, and to make it effective, Congress passed the Liquor Enforcement Act of 1936, and a part of that act pertinent hereto, 27 U.S.C.A. § 223, reads:

"(a) Whoever shall import, bring, or transport any intoxicating liquor into any State in which all sales * * * of in-

toxicating liquor containing more than 4 per centum of alcohol by volume are prohibited, * * * or attempt so to do * * shall * * * be guilty of a misdemeanor * * *.

"(b) In order to determine whether any one importing, bringing, or transporting intoxicating liquor into any State, or anyone attempting so to do, or assisting in so doing, is acting in violation of the provisions of this chapter, the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor (except for scientific, sacramental, medicinal, and mechanical purposes) are prohibited in such State."

Kansas has been one of the pioneers, first, in the regulation, and second, in the prohibition of the beverage liquor traffic. Indeed as early as 1855, her Territorial Legislature passed acts regulating such traffic. Those interested in the subject will find a synopsis of all the liquor laws of Kansas from 1855 to 1933, together with citations pertaining thereto, in a note or appendix to the opinion in Chapman v. Boynton, D.C., 4 F.Supp. 43, 47, from which it appears that prohibition of the beverage liquor traffic has had a progressive development in Kansas from regulation of the saloon and tavern down to and including "bone dry."

At the general election on November 2, 1880, the people of Kansas approved an amendment to the constitution (Article 15, section 10) providing: The manufacture and sale of intoxicating liquors shall be forever prohibited in this state, except for medical, scientific and mechanical purposes."

The above constitutional amendment has never been changed and since its passage Kansas has, in theory at least, been a dry state.

21-2101, General Statutes of Kansas Annotated, 1935, which has long been upon the statute books, in part reads: "It shall be unlawful for any person to directly or indirectly manufacture, sell, barter, or give away, furnish or keep or have in his possession for personal use or otherwise any spirituous, malt, vinous, fermented or other intoxicating liquors, * * *."

21-2109 of such statute was amended in the legislative session of 1937. See 1939 Supplement to the General Statutes of Kansas, 1935. The section now reads: The terms spirituous, malt, vinous, fermented or other intoxicating liquors as used in sections 21-2101 to 21-2108, inclusive, of the General Statutes of 1935, and all amendments thereto, are hereby defined to include all beverages which contain more than three and two tenths percent (3.2%) of alcohol by weight and all such beverages are hereby declared to be intoxicating liquors under the laws of this state. (G.S. 1935, § 21-2109; L.1937, ch. 213, § 1; May 1.)"

The next section reads: "21-2109a. The words 'intoxicating liquors' or 'intoxicating liquor' wherever used in the General Statutes of 1935, and acts amendatory thereto, shall be construed to mean all such beverages referred to in section 1 (21-2109) which contain more than three and two tenths percent (3.2%) of alcohol by weight. (L.1937, ch. 213, § 2; May 1.)"

In the legislative session of 1939 (Chapter 179, Session Laws of 1939), a further law was passed for the express purpose of qualifying Kansas for protection under the Twenty-First Amendment to the Constitution of the United States. The first section of this act recites: "21-2190. Importations of liquor into state prohibited; exceptions; permits; application; validity; form; rules and regulations; fee; return by consignee. That all importations of intoxicating liquor into this state are hereby prohibited: * * *." Then follows regulations for importation of intoxicating liquors for scientific, sacramental, medicinal, and mechanical purposes and provisions with reference to permits.

21-2195 reads: "Same; purpose of §§ 21-2190 to 21-2195. This act is intended to qualify Kansas for protection under the twenty-first amendment to the constitution of the United States. (L.1939, ch. 179, § 6; June 30.)"

It will be observed that the statutory definition of intoxicating liquors in Kansas includes all beverages such as spirituous, malt, vinous, fermented, or other intoxicating liquors which contain more than 3.2% of alcohol by weight. The liquor, therefore, must be a beverage and one of the beverages described in 21-2109.

Webster's New International Dictionary, Second Edition, (1940), defines the word "beverage" as:

"Liquid for drinking; drink; usually, drink artificially prepared, and of an agreeable flavor; as, an intoxicating beverage.

"2. Specif., any of various drinks, such as weak beer, or the diluted juice of fruit, sugar cane, ginger, etc."

The term "intoxicating liquors" is sufficiently defined in the statute itself, in so far as the Kansas laws are concerned, and the federal law makes the Kansas law applicable. As used in the federal statute and in the Kansas statute, the term "intoxicating liquors" should be given practical, common sense interpretation, one in keeping with the object Congress had in view in passing the Liquor Enforcement Act of 1936.

Under the decisions of the Supreme Court of Kansas, bitters, cordials, tonics, etc., and other compounds,[1] where the distinctive character and effect of intoxicating liquors are gone and their use as intoxicating liquors is practically impossible, are not within the statute, but if intoxicating liquor remains as a distinctive force in the compound and the same is reasonably likely to be used as an intoxicating beverage, then it is within the statute. Peach cider [2] may be an intoxicating liquor where sold for beverage purposes. Jamaica ginger [3] when sold as a beverage may be an intoxicating liquor, even though it has a medicinal use, and even though classified in the United States dispensatory with lemon, vanilla, cinnamon, clove, and like tinctures, extracts, and essences. Hard cider,[4] wild cherry extract,[5] raisin vinegar,[6] where knowingly sold to one to be used as a beverage, have been held to be intoxicating liquors.

The earlier decisions in Kansas have been largely reviewed in the case of State ex rel. v. Owston, 138 Kan. 173, 23 P.2d 616. That case quotes liberally from Justice Brewer's decision in the Intoxicating Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284, and quoting from Justice Brewer at page 177 of the opinion in 138 Kan., at page 618 of 23 P.2d:

"Now the cases before us group themselves into three classes; and the same division is far reaching and of general application. The first embraces what are generally and popularly known as intoxicating liquors, unmixed with any other substances. Thus in one case the sale of brandy is charged. The second includes articles equally well known, standard articles, and which, while containing alcohol, are never classed as intoxicating beverages. Their uses are culinary, medical, or for the toilet. They are named in the United States dispensatory and other similar standard authorities; the formulæ for their preparation are there given; their uses and character are as well recognized and known by their names as those of a horse, a spade, or an arithmetic. The possibility of a different and occasional use does not change their recognized and established character. A particular spade may be fixed up for a parlor ornament, but the spade does not belong there. So, essence of lemon may contain enough alcohol to produce intoxication, more alcohol proportionately than many kinds of wine or beer. It is possible than a man may get drunk upon it, but it is no intoxicating liquor. Bay rum, cologne, paregoric, tinctures generally, all contain alcohol, but in no fair or reasonable sense are they intoxicating liquors or mixtures thereof. The third class embraces compounds, preparations, in which the alcoholic stimulant is present, which are not of established name and character, which are not found in the United States dispensatory, or other like standard authorities, and which may be purely medicinal in their purpose and effect, or mere substitutes for the usual intoxicating beverages. If not intoxicating liquors they may be 'mixtures thereof' within the scope of the statute. Here belong many of the patent medicines, the bitters, cordials, and tonics of the day. Here also are such compounds as that charged in one of the informations before us, a compound of whisky, tolu and wild cherry.

"Now in reference to these several classes, we think these rules may be laid down: The first class is within and the second class without the statute, and the court as matter of law may so declare. It is unnecessary, in charging the sale of

[1] Intoxicating Liquor Cases, 25 Kan. 751, 37 Am.Rep. 284.

[2] City of Topeka v. Zufall, 40 Kan. 47, 19 P. 359, 1 L.R.A. 387.

[3] State v. Miller, 92 Kan. 994, 142 P. 979, L.R.A.1917F, 238, Ann.Cas.1916B, 365.

[4] State v. Schaefer, 44 Kan. 90, 24 P. 92.

[5] State v. Kane, 114 Kan. 426, 219 P. 281.

[6] State v. Metzger, 121 Kan. 837, 250 P. 258.

See State v. Trione, 97 Kan. 365, 155 P. 29; City of Topeka v. Heberling, 134 Kan. 330, 5 P.2d 816; State v. Corbin, 135 Kan. 79, 80, 9 P.2d 627.

whiskey, or brandy, etc., to allege that it will produce intoxication; nor will it bring the sale of essence of lemon within the statute to allege that such essence will produce intoxication. The courts will take judicial notice of the uses and character of these articles. You need not prove what bread is, or for what purposes it is used. No more need you in respect to whisky or gin on the one hand, or cologne, or bay rum, on the other. They are all articles of established name and character. In reference to the third class, the question is one of fact, and must be referred to a jury. If the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute."

Again at page 178 of 138 Kan., at page 619 of 23 P.2d:

" 'Now what was the evil sought to be remedied by this statute, and the constitutional amendment of which it was an outgrowth? It was the use of intoxicating liquors as a beverage.'

" 'The use of intoxicating liquors as a beverage was the evil, and the statute must be read in the light thereof. It intended to put a stop to such use, and limit the use to the necessities of medicine.'

" 'The courts may not say as a matter of law that the presence of a certain per cent. of alcohol brings the compound within the prohibition, or that any particular ingredient does or does not destroy the intoxicating influence of the alcohol, or prevent it from ever becoming an intoxicating beverage.' "

But these cases do not mean that Congress in passing the Liquor Enforcement Act of 1936 contemplated that the state would have to prohibit the importation of lemon or vanilla extract and items of such character simply because some liquor addict may have resorted to the use of such tinctures, extracts, and essences as intoxicating beverages. To place such a construction upon the Act of Congress and the act of the legislature of Kansas of 1939 would be entirely too narrow and would defeat the purpose of both.

In the report of the Committee on the Judiciary, Seventy-Fourth Congress, First Session, Report No. 1258, in discussing the purpose and scope of the Liquor Enforcement Act of 1936, it was stated:

"The purpose of the bill is to enforce the twenty-first amendment to the Constitution of the United States, which was declared to be effective on December 5, 1933, and which guarantees Federal protection to 'dry' states against liquor-law violations directed from outside their borders. The bill extends this affirmative protection to States which forbid all sales for beverage purposes of intoxicating liquor containing more than 4 percent of alcohol by volume (3.2 percent of alcohol by weight.) Your committee felt it was essential to protect States which permit the sale of liquor containing as much as 4 percent of alcohol by volume, in order to keep faith with the action taken by Congress in the so-called 'Cullen Beer Act' of March 22, 1933, which legalized light wines and beers containing not more than 3.2 percent of alcohol by weight. * * *

"Subsection (a) defines a 'dry' State, i. e., a State that will receive protection, as one which forbids the sale of intoxicating liquor containing more than 4 percent of alcohol by volume, thereby adhering to the precedent of the so-called 'Cullen Beer Act of 1933', and keeping faith with the states that have followed that Congressional determination; subsection (b) then requires an examination of the 'dry' State's definition of intoxicating liquor in order to determine whether a given shipment must be accompanied by a permit."

The House Judiciary Committee, when it described (parenthetically) "4% of alcohol by volume" as the equivalent of "3.2% of alcohol by weight," knew that these expressions had long been accepted by all concerned, including the Bureau of Internal Revenue, as meaning substantially the same thing so far as the classification of intoxicating liquor is concerned, as well as for other practical purposes. It is clear that neither Congress nor the legislature of Kansas, both of which accepted the above expressions as meaning the same thing, intended that the carrying out of their agreed purpose should be defeated by an insignificant, quibbling difference between 3.2 per cent by weight and 4 per cent by volume.

In the Cullen Beer Act of 1933 (Beer-Wine Revenue Act) 48 Stat. 16, 27 U.S. C.A. § 64a, legalizing the sale of non-intoxicating liquor before the repeal of the Eighteenth Amendment, such liquors were designated as not more than 3.2% of alcohol by weight, and in Report No. 3, Seventy-

Third Congress, First session, the Committee on Ways and Means, in discussing this bill on page 2 stated: "The bill provides for a manufacturers' excise tax of $5 per barrel on all beer, lager beer, ale, porter and other similar fermented liquor containing one-half of 1 per cent of alcohol by volume, and not more·than 3.2 per cent of alcohol by weight, which is equivalent to 4 per cent by volume."

It is thus seen that Congress in enacting the Enforcement Act of 1936, as well as the Beer Act of 1933, intended that "3.2% by weight" should be regarded as the same thing as "4% by volume." That it was likewise so regarded generally throughout the United States will be seen by the case of Louisville & Nashville R. R. Co. v. Falls City Ice & Beverage Co., Inc., 249 Ky. 807, 61 S.W.2d 639, 640, 91 A.L.R. 509, wherein the Court of Appeals of Kentucky, referring to the Beer Act of 1933, said: "The alcoholic content of the beverage here under consideration, 3.2 per cent. by weight, is equivalent to approximately 4 per cent. by volume." In the case of Commonwealth v. Rigo, 249 Ky. 824, 61 S.W.2d 900, 901, the Court said that the defendant "Began to retail beer [April 7, 1933] containing not more than 3.2 per cent. alcohol by weight or 4 per cent. alcohol by volume as permitted by the Amendment to the Volstead Act passed by Congress at its recent special session (27 U.S.C.A. § 64a et seq.), and which legalized the manufacture and sale of beer of not to exceed that alcoholic content."

It is interesting to note that in the neighboring state of Missouri the District Judges are not in agreement concerning the Kansas law.

In United States v. 1940 Model Dodge Coupe, Motor No. D14–191545, No. 674,[1] Judge Merrill E. Otis was of the opinion that the Kansas statute was insufficient.

On the other hand, Judge Albert Reeves on January 14, 1941, in United States v. Arnold, D.C., 38 F.Supp. 863, was of the opinion the Kansas law qualified Kansas for protection under the Twenty-First Amendment and the Liquor Enforcement Act of 1936.

In United States v. Walter R. Dolloff,[1] Judge John Caskie Collet made findings of fact and conclusions of law which may be noted. The fifth, sixth, and seventh findings, and conclusions of law one, two and three, respectively, read:

5th. "That an alcoholic mixture can be prepared which will contain 3.2% of alcohol by weight and 4.9% of alcohol by volume; that such mixture in the strict sense of the words would be a potable beverage but that there is no such mixture sold as a beverage, or in general use as a beverage.

6th. "That the common alcoholic liquors in general use are whiskey, brandy, rum, gin and beer and wine; ·that whiskey, rum, gin and brandy are distilled liquors with an alcoholic content greatly in excess of either 3.2% by weight or 4% by volume; that said liquors are mixtures of alcohol and water with small traces of other solids; that were a beverage prepared containing the same proportion of solids as the said liquors, only 3.2% of alcohol by weight and the remainder of water, that said liquors would contain 4% of alcohol by volume; that beer and ᴸwine have a slightly higher percentage of solids than the liquors aforesaid; that beers and wines containing 3.2% of alcohol by weight will have slightly in excess of 4% of alcohol by volume and that said excess is usually so small as to be disregarded in ordinary commercial laboratory tests.

7th. "That the generally accepted table for measuring the relative quantities of alcohol in alcoholic beverages by weight and by volume is the table published by the United States Bureau of Standards, of which the court will take judicial notice and which was referred to in the evidence, that by said table an alcoholic beverage containing 3.2% of alcohol by weight· will contain approximately 4% of alcohol by volume.

"Conclusions of Law

1. "That it was the intent of the legislature of the State of Kansas as expressed in the provisions of Chapter 179 of the Session Laws ·of 1939, approved March 21, 1939, to qualify the State of Kansas for protection under the twenty-first amendment to the Constitution of the United States and under Section 223 of Title 27 U.S.C.A., being the Liquor Enforcement Act of 1936.

2. "That by the provisions of Chapter 179 of the Laws of Kansas above set out, the State of Kansas has qualified for pro-

---

[1] No opinion for publication.

tection under the twenty-first article of amendment to the Constitution of the United States and under the United States Liquor Enforcement Act of 1936.

3. "The defendant's contention is wholly without merit. The laws of Kansas were enacted in the light of the federal legislation and expressly intended to bring the State of Kansas under the protection of the Federal Act, thus requiring a construction of the two Acts to bring about that result. That it is possible to do so is clear from the fact that it is ordinarily understood in ordinary cases that any liquid containing 3.2% of alcohol by weight contains approximately 4% of alcohol by volume. Unusual mixtures are not involved in this case nor is there anything to indicate that the possibility of the manufacture of a liquid containing only 3.2% of alcohol by weight but more than 4% by volume was intended to bar a state prohibiting the sale of intoxicating liquor containing more than 3.2% by weight, from the protection of the Federal Act.

"Sub-section (b) compels the conclusion noted. By unequivocal language, the Congress has declared that in determining whether anyone is transporting intoxicating liquor into the State forbidding the sale of intoxicating liquor therein, in violation of the Federal Act, the question of whether the commodity is intoxicating liquor, the transportation of which into the dry state is forbidden by the Federal Act, shall be determined by the laws of the State into which the liquor is being transported. Following the legislative direction the Congressional definition of intoxicating liquor will be disregarded when that definition does not coincide with the definition of intoxicating liquor found in the laws of the State under consideration and the definition of the laws of the State substituted. In the light of past judicial declarations and practical experiences, which are matters of common knowledge, it can hardly be denied that the term 'intoxicating liquor' is a comparative one—liquors of low alcoholic content being considered by some as intoxicating—and liquors of a comparatively high alcoholic content not being so considered by others. Hence, the arbitrary designation of a particular percentage of alcohol which is for practical purposes to be used as a criterion for determining the intoxicating character of the liquor, was by the provisions of the Congressional Act above noted, left partially to the States with the result that any state which saw fit to provide that only liquor containing more than 4.9% or 5% or 6% or some other arbitrary percentage of alcohol by volume should be considered as intoxicating, might still have the protection of the Federal Act which forbids the transportation from another state into that state of liquors which the latter state has declared to be intoxicating and which may not be sold therein."

Judge Collet refers to a potable beverage being made containing 3.2% of alcohol by weight and 4.9% of alcohol by volume. Such a beverage would indeed be an unusual mixture. It would not be a standard, recognized drink, and there is no commercial drink known containing such percentages. If a new and unheard of beverage or concoction could be compounded wherein 3.2% of alcohol by weight would be substantially in excess of 4% of alcohol by volume, it should not be considered as an intoxicating liquor and would not be an intoxicating liquor within the meaning of the Liquor Enforcement Act of 1936 in the absence of a showing that it was used commercially.

For all practical purposes, a beverage containing 3.2% of alcohol by weight is the equivalent of substantially 4% of alcohol by volume. The Congress of the United States and the legislature of the state of Kansas so considered them, and they should be so considered by this court.

In many of the Food and Drug laws, where weights are involved, a tolerance is allowed due to human frailties in securing an exactness of measurement or weight. With equal propriety, even though in a given beverage 3.2% of alcohol by weight may not be the exact equivalent of 4% of alcohol by volume in the same beverage, yet for all practical purposes minute fractions should be disregarded. To do otherwise would be but to resort to technicalities and to disregard substance and the essence of the evil against which Kansas endeavored to legislate.

■■ This court may not be concerned with the wisdom of these laws. That is a matter that primarily addresses itself to the respective legislative bodies, but so long as so large a percent of the automobile accidents result from the drivers using intoxicating liquor, the intoxicating liquor problem is not solved. Nor has it been solved in or by the states that have little,

if any, restriction upon its use. Laws prohibiting the sale and use of intoxicating liquors were cradled in Kansas. The right of a sovereign state to effectively prohibit the importation of intoxicating liquors into such state in keeping with the intent expressed in the Twenty-First Amendment should not be denied without impelling reasons. It should not be denied simply because some reputable chemists may be able to compound or produce a nameless mixture unknown in commercial trade, which, at the instant of being so compounded, may contain only 3.2% of alcohol by weight and very slightly in excess of 4% of alcohol by volume.

The court concludes that defendant's plea in abatement and demurrer to the evidence should be denied and that the defendant is guilty as alleged in the indictment. Appropriate suggested findings of fact and conclusions of law may be prepared in accordance with the views herein expressed.